STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. RICHARD BIEGENWALD, DEFENDANT-RESPONDENT.

Argued May 1, 1984—Decided June 26, 1984.

*Alton D. Kenney,* Assistant Prosecutor, argued the cause for appellant (*John A. Kaye,* Monmouth County Prosecutor, attorney; *William J. Zaorski,* Assistant Prosecutor, of counsel; *Paul F. Jannuzzo* and *James W. Kennedy,* Assistant Prosecutors, on the brief).

*Glen J. Vida* argued the cause for respondent.

*Richard R. Shiarella,* Deputy Attorney General, argued the cause for *amicus curiae,* Attorney General of New Jersey (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *Richard R. Shiarella* and *Catherine A. Foddai,* Deputy Attorneys General, of counsel and on the brief).

PER CURIAM.

■ This appeal arises under the provisions of the New Jersey Code of Criminal Justice (Code) authorizing a separate proceeding for purposes of determining the sentence to be imposed upon a defendant found by a jury to be guilty of the crime of murder. *N.J.S.A.* 2C:11–3c. The case requires that we determine whether, during the penalty phase of a capital proceeding, the State may use as an aggravating factor, pursuant to *N.J.S.A.* 2C:11–3c(4)(a), a defendant's prior conviction for

murder when the appeal of that conviction has not yet been resolved. We now hold that a defendant having been found guilty of murder, cannot, pending the conclusion of direct appeal proceedings challenging the guilty verdict, be considered as "having been convicted" for sentencing purposes under the capital punishment provisions of the Code.

## I

Defendant, Richard Biegenwald, was charged in separate indictments with a series of murders: Anna Olesiewicz, on August 27, 1982; William Ward, on September 21, 1982; Maria Ciallella, on October 31, 1981 and Deborah Osborne on April 7, 1982; and Betsy Bacon on November 20, 1982.

On December 7, 1983, defendant was convicted of the murder of Anna Olesiewicz. By its special verdict the jury directed that the death penalty be imposed. Defendant's appeal of this disposition is presently pending before the Court.

Defendant next was tried for the murder of William Ward. During jury selection, the State indicated that should defendant be found guilty, it intended to rely on the Olesiewicz conviction and on defendant's 1959 conviction for the murder of Stephen Sladowski as aggravating factors, pursuant to *N.J.S.A.* 2C:11–3c(4)(a), during the penalty phase of the trial. The trial court ruled that while the 1959 conviction would be admissible, the Olesiewicz conviction, awaiting appellate review, could not be considered a "prior conviction" for purposes of constituting an aggravating factor.

Defendant was found guilty of the murder of William Ward on February 16, 1984. The State subsequently sought leave to appeal the trial court's earlier ruling that denied the use of the Olesiewicz conviction as an aggravating factor. The Appellate Division summarily denied the motion. We also denied the motion for leave to appeal. As a result, the only prior conviction constituting an aggravating factor—and the only aggravating factor—considered by the jury in the penalty phase of the

Ward murder trial was defendant's 1959 murder conviction. The jurors were unable to agree whether this aggravating factor outweighed the mitigating factors recognized. Accordingly, defendant was sentenced to life imprisonment with thirty years parole ineligibility, pursuant to *N.J.S.A.* 2C:11–3c(3)(c).

The State thereafter moved for trial the indictment charging the Bacon homicide. It sought to use the Olesiewicz and Ward convictions as aggravating factors in the prosecution of the Bacon case. The trial court permitted the State to amend its notice of aggravating factors to include the Olesiewicz and Ward murders but then ruled that these convictions could not be used "for any purpose unless affirmed by our Supreme Court."

On April 6, 1984, this Court directly certified the State's interlocutory appeal from that portion of the trial court's decision that disallowed the State use of the Olesiewicz and Ward convictions. —— *N.J.* —— (1984). For the same reasons that prompted our consideration of the interlocutory issues in the cases of *State v. Bey*, 96 *N.J.* 625 (1984), and *State v. Davis*, 96 *N.J.* 611 (1984), we undertake to decide this appeal. We disclaim consideration or intimation of any views concerning the constitutional, statutory, and procedural issues that may be presented in subsequent capital cases.

II

*N.J.S.A.* 2C:11–3c(4)(a) provides that a jury at the penalty phase of a capital proceeding may consider as an aggravating factor the fact that "the defendant has previously been convicted of murder." The issue posed is whether the previous conviction must be "final" in the sense that appellate review has been concluded or exhausted.

■ Whether a prior conviction under *N.J.S.A.* 2C:11–3c(4)(a) contemplates the absence of a pending appeal from such a conviction is unclear on the face of the statutory provision. The relevant language—"has previously been convicted of murder"—simply does not explicate the necessity for or degree of

finality that must attach to a prior conviction in order for it to be available for consideration as an aggravating factor. We must, therefore, resort to intrinsic and extrinsic aids of statutory interpretation to glean the legislative intent. *State v. Butler*, 89 *N.J.* 220 (1982); *State v. Brown*, 22 *N.J.* 405 (1956).

█ In resolving doubts and uncertainties as to the meaning to be given a statutory provision, reference to related statutes can be instructive. Consistent construction of other statutes and statutory provisions *in pari materia* can be indicative of the intended understanding to be accorded the legislation under scrutiny. Further, the historical antecedents of a statute can be enlightening with respect to its proper meaning. *State v. Gill*, 47 *N.J.* 441 (1966); *State v. Brown, supra*, 27 *N.J.* at 415.

Under the Code as originally enacted (effective September 1, 1979), murder was a first degree crime punishable by a sentence of either (1) thirty years with a minimum parole ineligibility term of fifteen years or (2) as a first degree crime with a maximum term of thirty years. Parole eligibility applied to the latter option. The sentencing court was vested with the discretion to determine which option would be imposed, subject to the general guidelines set forth as aggravating and mitigating factors in *N.J.S.A.* 2C:44–1. The defendant was also exposed to the possibility of an extended term, pursuant to *N.J.S.A.* 2C:43–7. As such, he could be sentenced to a specific term ranging between thirty years and life imprisonment. Such sentence made him parole-eligible. If he fell into one of the categories specified in *N.J.S.A.* 2C:44–3, he could, in addition, receive a fixed minimum term of one-half of a specific term of years imposed or twenty-five years without parole if a life sentence were imposed. *See State v. Maguire*, 84 *N.J.* 508 (1980).

As a result of the Code amendments establishing death as a possible penalty for murder (effective August 6, 1982), there are now three sentencing options: (1) death; (2) a sentence of thirty years without parole; (3) a sentence between thirty years and life, with a mandatory minimum thirty year term of parole ineligibility. *N.J.S.A.* 2C:11–3b. The reference to an extended

term sentence was deleted from *N.J.S.A.* 2C:11–3b. *N.J.S.A.* 2C:43–7a(1) was likewise deleted. *Cf. State v. Serrone*, 95 *N.J.* 23, 26 (1983). This history is instructive, as it indicates that from the outset the most severe sentence for murder was subject to extended term sentence requirements and implicated *N.J.S.A.* 2C:44–3 and *N.J.S.A.* 2C:44–4. One factor justifying the imposition of an extended term is that defendant is a "persistent offender"—one who "has been previously convicted * * * of two crimes." *N.J.S.A.* 2C:44–3a. Significantly, *N.J.S.A.* 2C:44–4b defines "prior conviction" for these purposes by providing that a finding of guilt by court or jury "constitutes a prior conviction, although sentence or the execution thereof was suspended, *provided that the time to appeal has expired* * * *." *N.J.S.A.* 2C:44–4b (emphasis added). Thus, a defendant who has been found guilty of a crime in a prior proceeding, but who is pursuing a timely appeal, has not "been convicted previously" of a crime for purposes of sentencing him or her to an extended term of imprisonment. Similarly, the Model Penal Code § 7.05, from which *N.J.S.A.* 2C:44–4 is derived, requires the absence or resolution of a pending appeal before a prior conviction may be used to impose an extended term.

With the 1982 amendments the Legislature enacted *N.J.S.A.* 2C:11–3c(4)(a) as one in a series of aggravating factors. The operative language used therein—"previously convicted"—is identical to that utilized in the extended term provision, *N.J.S.A.* 2C:44–3a. It is not unreasonable to surmise that the Legislature intended the definition of "prior conviction," as articulated in *N.J.S.A.* 2C:44–4b, to apply to *N.J.S.A.* 2C:11–3c(4)(a) as well, so that before a prior conviction of murder may be used as an aggravating factor at the penalty phase of a capital proceeding, the direct appellate process affecting that conviction must be exhausted. *See generally State v. Bander*, 56 *N.J.* 196 (1970) (intention of Legislature must be derived from whole act, so as to effectuate general statutory scheme); *State v. Madewell*, 117 *N.J.Super.* 392 (App.Div.), aff'd, 63 *N.J.* 506 (1971) (in construing penal statute, all provisions are to be related and court must consider statute as whole); *State v.*

*DeMarco*, 174 *N.J.Super.* 411 (Law Div.1980) (meaning of particular language must be gleaned not only from words used within confines of given section but from those words when read in connection with entire enactment).

■ Our reading of the statute is guided too by pragmatic concerns for judicial finality. Construing the operative language to require that all avenues of direct appeal be exhausted before a prior conviction may serve as an aggravating factor diminishes the risk of resentencing in the event that such a previous judgment of conviction is subsequently reversed.[1]

We are supported in this position by the weight of authority that while an appeal is pending, a defendant cannot be considered as having been convicted for purposes of recidivist sentencing schemes. Annot., 5 *A.L.R.*2d 1080, 1092 (1949). The sentencing of the recidivist offender implicates concerns of judicial economy, which are reflected in the policy that limits recidivist sentencing to cases in which a defendant's prior conviction has become final so as to avoid the costs, time delays, and drain on judicial resources that would attend resentencing in the event that the relied upon but still pending conviction was subsequently reversed. *See generally State v. Harris*, 97 *N.J.Super.* 510, 513 (App.Div.1967) (erroneously relying on prior conviction to enhance sentence imposed pursuant to second judgment is not harmless error, even if same sentence could have been imposed, as judge might have reached

---

[1] Improper introduction of a judgment as an aggravating factor would result in a need for resentencing. In fact, states whose death penalty statutory schemes are comparable to ours (insofar as they require the jury to balance aggravating and mitigating factors when deciding whether to impose the death penalty), *see, e.g., Ark.Stat.Ann.* § 41–1302(1) (1977); *N.C.Gen.Stat.* § 15A–2000(b) (Supp.1979); *Tenn.Code Ann.* § 39–2–203(g) (Supp.1979); *Wyo.Stat.* § 6–4–102(d)(1) (1977), have generally held that a sentence of death that is based on both valid and invalid aggravating factors must be set aside. *See, e.g., Williams v. State*, 274 *Ark.* 9, 621 *S.W.*2d 686 (1981), *cert.* denied, 459 *U.S.* 1042, 103 *S.Ct.* 460, 74 *L.Ed.*2d 611 (1982); *State v. Moore*, 614 *S.W.*2d 348, 351–52 (Tenn.), *cert.* denied, 454 *U.S.* 970, 102 *S.Ct.* 517, 70 *L.Ed.*2d 388 (1981); *Hopkinson v. State*, 632 *P.*2d 79, 90 n. 1, 171–72 (Wyo.1981), *cert.* denied, 455 *U.S.* 922, 102 *S.Ct.* 1280, 71 *L.Ed.*2d 463 (1982).

different conclusion had he not considered first judgment); *Janiec v. McCorkle*, 52 *N.J.Super.* 1 (App.Div.1958), *cert.* denied, 362 *U.S.* 944, 80 *S.Ct.* 811, 4 *L.Ed.*2d 772 (1959) (fundamental fairness requires procedure to allow those subject to sentence as persistent offenders to challenge early judgments even if they have served full sentence on those judgments).

A parallel approach was noted by the Third Circuit Court of Appeals in *United States v. Allen*, 566 *F.*2d 1193, 1195 (1977), *cert.* denied, 435 *U.S.* 926, 98 *S.Ct.* 1491, 55 *L.Ed.*2d 519 (1978). The court concluded that these same considerations most likely prompted Congress, in 1970, to amend the punishment-enhancement provision of the Comprehensive Drug Abuse Prevention and Control Act, 21 *U.S.C.A.* § 841(b)(1)(B), by substituting the words "has become final" for the words "previously been convicted." Pub.L. No. 91–513, Title II, § 401, 84 Stat. 1260 (1970). By limiting recidivist sentencing to cases in which the conviction has become final, *i.e.*, the time for appeal has expired or a pending appeal has been concluded, it seems likely that Congress intended to avoid the risks and evils of repeat sentencing.

■ Further, our interpretation is bolstered by considerations of fundamental fairness. We have long recognized that an individual's prior conviction may be used to affect his or her testimonial credibility as a witness. *N.J.S.A.* 2A:81–12; *State v. Sands*, 76 *N.J.* 127 (1978); *State v. Hawthorne*, 49 *N.J.* 130 (1967). In *State v. Blue*, 129 *N.J.Super.* 8 (App.Div.1974), certif. den., 66 *N.J.* 328 (1978), the court held that a defendant's prior conviction was not admissible for the purpose of impeaching credibility when that conviction was then on appeal. The Appellate Division observed that it was "fundamentally unfair to permit the use of a prior conviction to impeach credibility while the very credibility of this conviction itself is under attack through the appellate process." *Id.* at 12. The cogency of this reasoning applies, even more forcibly, where life is at stake. Indeed, it would be anomalous to permit the use of convictions

that are awaiting appellate review when sentencing defendants to death in light of the fact that such use has been deemed impermissible in a setting in which only a custodial term can be the ultimate sanction. Imposition of the penalty of death is "profoundly different from all other penalties," *Lockett v. Ohio*, 438 *U.S.* 586, 605, 98 *S.Ct.* 2954, 57 *L.Ed.*2d 973, 990 (1978), and, as such, requires more, not fewer, procedural safeguards than would attend imposition of a custodial sentence. *Furman v. Georgia*, 408 *U.S.* 238, 92 *S.Ct.* 2726, 33 *L.Ed.*2d 346 (1972).

We acknowledge that our resolution of the question presented is not free from doubt. We note that Model Penal Code § 7.05, the source of *N.J.S.A.* 2C:44–4, now appears to be the minority rule. *See, e.g., State ex rel. Corbin v. Court of Appeals, Division I*, 103 *Ariz.* 315, 441 *P.*2d 544 (1968) (interpreting the phrase "who has previously been convicted" under *Ariz.Rev.Stat.Ann.* § 13–604 (amended 1980) not to require absence of pending appeal); *Swift v. People*, 174 *Colo.* 259, 488 *P.*2d 80 (1971) (interpreting the phrase "has twice previously been convicted" under *Colo.Rev.Stat.* § 16–13–101 (1973) (amended 1979) not to require absence of pending appeal); *State v. Martin*, 316 *So.*2d 740, 742–43 (La.1975) (interpreting the phrase "having been convicted" under *La.Code Crim.Pro. Ann.* art. 529.1 (West Supp.1982) not to require absence of pending appeal). However, in many such instances a statutory provision specifically dispenses with the requirement that a conviction be final. *See, e.g., Ark.Crim.Code* § 41–1003 (1977) (permitting proof that defendant "has previously been convicted" by any evidence demonstrating that defendant "was found guilty").

We recognize too that our holding may result in the serial murderer's escaping the sentencing onus of his prior convictions. However, we hasten to add that the exclusion of previous convictions that are awaiting appellate review surely will not automatically result in the imposition of a life, as opposed to death, sentence in any given case. We note also that in the

event a murderer escapes the death penalty, the alternative—imposition of a life sentence with the mandatory minimum term of parole ineligibility—remains a severe sanction.

■ In the final analysis, we are compelled in this context to resolve any doubt or ambiguity in favor of the accused. *State v. Maguire, supra,* 84 *N.J.* at 514; *State v. N.J., Juvenile,* 125 *N.J.Super.* 566 (App.Div.1973). We recognize that the relevant statutory language plausibly could be read to apply to convictions despite the fact that a direct appeal is pending. While on balance we reject this interpretation, we acknowledge that this is a matter committed to the wisdom of the Legislature and that the Legislature may clarify or modify the present scheme to the extent that our interpretation does not commend itself to some as yet unarticulated statutory purpose or policy.

The judgment below is affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*For reversal*—None.