STATE OF NEW JERSEY, v. JAMES J. KOEDATICH.

December 5, 1984.

## ORDER

This matter having been duly presented to the Court, and good cause appearing;

It is ORDERED that the motions of the Attorney General and the American Civil Liberties Union of New Jersey to participate as *amici curiae* are granted; and it is further

ORDERED that the motion of defendant to dismiss the appeal filed by the Appellate Section of the Office of the Public Defender is denied; and it is further

ORDERED that the motion of the Attorney General to stay the execution is dismissed as moot, defendant's appeal automatically staying the execution pursuant to *R.* 2:9–3(a); and it is further

ORDERED that, in addition to the present appeal prosecuted by the Appellate Section of the Office of the Public Defender, defendant may secure other counsel or proceed *pro se* in order to raise such arguments on the appeal as he may feel are necessary and appropriate.

## MEMORANDUM OPINION

O'HERN, J., concurring in part, dissenting in part.

This matter arises on defendant's motion to dismiss the notice of appeal filed in his behalf by the Appellate Section of the Office of the Public Defender. I concurred in the Court's disposition of that motion on December 4, 1984, continuing the appeal of defendant's conviction of capital murder.

I would have accelerated for early disposition one phase of that appeal on the basis of the matters set forth in the defendant's moving papers. In the papers before us, defendant's trial counsel averred that, at the request of the defendant, no

mitigating factors were presented to the sentencing jury by counsel. A partial transcript of the sentencing proceedings contains a recital by defendant that he did not want his counsel to present "evidence of mitigating factors at the death penalty phase." Counsel's affidavit recites further only that the statement was read into the record and a written copy signed by defendant.

Depending upon the nature of the proceedings thereafter, a question of significant dimension is apparent. Of all that has been written or said about the imposition of the death penalty, nothing is more graphic than Justice Stewart's admonition that a state capital sentencing scheme that will survive constitutional scrutiny must not result in death sentences that are "wantonly and * * * freakishly imposed." *Furman v. Georgia,* 408 *U.S.* 238, 309–10, 92 *S.Ct.* 2726, 2762–63, 33 *L.Ed.*2d 346, 390 (1972) (Stewart, J., concurring).

Central to the constitutionality of such a scheme is that the statutes ensure that the sentencers would be "given guidance regarding the factors about the crime and the defendant that the State, representing organized society, deems particularly relevant to the sentencing decision." *Gregg v. Georgia,* 428 *U.S.* 153, 192, 96 *S.Ct.* 2909, 2934, 49 *L.Ed.*2d 859, 885 (1976) (opinion of Stewart, Powell, and Stevens, JJ.). Such procedures seek to assure a "measured, consistent application and fairness to the accused." *Eddings v. Oklahoma,* 455 *U.S.* 104, 111, 102 *S.Ct.* 869, 875, 71 *L.Ed.*2d 1, 8 (1982). What is required at the capital sentencing stage is an individualized determination on the basis of the character of the individual and the circumstances of the crime. *Eddings, supra,* 455 *U.S.* at 110–12, 102 *S.Ct.* at 874–75, 71 *L.Ed.*2d at 8–9 (1982).

The record before us does not disclose how or whether the jury was informed of the essential information concerning the character of the defendant that should precede the jury's judgment. In the exercise of supervisory powers over appeals, we may accelerate an appeal on our own motion. *R.* 2:9–2. The

record of the sentencing proceedings is presumably brief and lends itself to separate review. Accelerated review of that issue, plainly presented to us on these papers, could proceed without interruption of the orderly parallel disposition of the appeal of the guilt phase of these proceedings.