STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. RICHARD
BIEGENWALD, DEFENDANT–RESPONDENT.

Argued March 29, 1988—Decided June 20, 1988.

*Mark P. Stalford,* Assistant Prosecutor, argued the cause for plaintiff-appellant (*John Kaye,* Monmouth County Prosecutor, attorney).

*Glen J. Vida,* argued the cause for defendant-respondent.

*Judith L. Borman,* Deputy Public Defender, II, argued the cause for *amicus curiae,* Office of the Public Defender (*Alfred A. Slocum,* Public Defender, attorney).

*Boris Moczula,* Deputy Attorney General, submitted a letter in lieu of brief on behalf of the Attorney General (*W. Cary Edwards,* Attorney General, of New Jersey, attorney).

The opinion of the Court was delivered by

GARIBALDI, Justice.

In *State v. Biegenwald,* 106 *N.J.* 13 (1987) (*Biegenwald II* ), we affirmed Richard Biegenwald's conviction for the murder of Anne Olesiewicz but reversed his death sentence and remanded the case for a new sentencing procedure. This interlocutory appeal concerns the aggravating factors that may be used in defendant's new sentencing proceeding in the Olesiewicz case. Specifically, the issue here is whether in the new penalty phase of the Olesiewicz case the State may introduce as evidence of

aggravating factor *N.J.S.A.* 2C:11-3c(4)(a) [1] defendant's murder conviction of William Ward, obtained after his Olesiewicz murder conviction, but before the resentencing phase of that case.

*N.J.S.A.* 2C:11-3, the Capital Punishment Act (the Act), is silent with respect to proceedings on retrial. We entertain this interlocutory appeal in view of its importance to the State and to this defendant and similarly-situated defendants, in establishing some guidelines to be applied in the resentencing phase of a capital case.

I

On December 7, 1983, a Monmouth County jury convicted the defendant, Richard Biegenwald, of the murder of Anna Olesiewicz and sentenced him to death. At the sentencing phase, the prosecutor sought to establish two aggravating factors: Sec. (c)(4)(a), which provided at that time that the State could introduce evidence that "[t]he defendant has previously been convicted of murder;" and Sec. c(4)(c), which provides that "[t]he murder was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated assault to the victim". As evidence of Sec. (c)(4)(a) the State introduced defendant's 1959 murder conviction for which he served almost eighteen years in prison.[2] The defendant sought to establish three mitigating factors: Sec. c(5)(a), that "defendant was under the influence of extreme mental or emotional disturbance insufficient to constitute a defense to

---

[1]*N.J.S.A.* 2C:11-3, the State's capital punishment act (*L.*1982, *c.* 111), consisted of five subsections, (a) to (e), at the time of these crimes and their trials. The death penalty provisions are found in subsections (c) to (e). For convenience, in referring to these provisions we shall, for instance, use Sec. c(4)(a) to designate *N.J.S.A.* 2C:11-3c(4)(a). When cited in its totality, *N.J.S.A.* 2C:11-3 will hereinafter be referred to as "the Act."

[2]Biegenwald was indicted for four other murders: Maria Ciallella, allegedly murdered on October 31, 1981; Deborah Osborne, on April 7, 1982; Betsy Bacon, on November 20, 1982; and William Ward, on September 21, 1982. *See State v. Biegenwald,* 96 *N.J.* 630, 633 (1984) (*Biegenwald I*).

prosecution;" Sec. c(5)(d), that "defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law was significantly impaired as the result of mental disease or defect ... but not to a degree sufficient to constitute a defense to prosecution;" and Sec. c(5)(h), "[a]ny other factor which is relevant to the defendant's character or record or to the circumstances of the offense."

The jury found both aggravating factors beyond a reasonable doubt and two of the mitigating factors, Sec. c(5)(d) and (5)(h). However, the jury found that neither aggravating factor was outweighed by the combined mitigating factors. Accordingly, pursuant to Sec. c(3)(a), defendant was sentenced to death.

Defendant appealed to this Court as of right under *Rule* 2:2–1(a)(3). On March 5, 1987, this Court affirmed Biegenwald's murder conviction but reversed the death sentence because the trial court failed to instruct the jury properly in the sentencing phase that it must find beyond a reasonable doubt that the aggravating factors outweigh the mitigating factors. *See Biegenwald II, supra,* 106 *N.J.* at 18.

On February 16, 1984, after defendant's conviction for the Olesiewicz murder, but before this Court's disposition of his appeal in that case, defendant was convicted of the murder of William Ward. In the Ward case, the State again presented defendant's 1959 murder conviction as evidence of aggravating factor c(4)(a), but also attempted to present defendant's prior conviction for the Olesiewicz murder as further evidence of that factor. *Biegenwald I, supra,* 96 *N.J.* at 633. In *Biegenwald I,* we held that during the penalty phase of the Ward capital proceeding the State could not use defendant's Olesiewicz murder conviction to prove Sec. c(4)(a). The jury convicted defendant of Ward's murder and the trial court sentenced him to life imprisonment with thirty years of parole ineligibility. The Appellate Division affirmed Biegenwald's conviction for the murder of Ward. On May 28, 1987, we denied defendant's petition for certification in the Ward case. 107 *N.J.* 649 (1987).

In the new penalty phase of the Olesiewicz murder case, the State made a motion to admit defendant's 1984 conviction for the murder of William Ward as evidence of aggravating factor Sec. c(4)(a). The trial court denied the State's motion. By order dated February 19, 1988, we granted the State's interlocutory motion for leave to appeal the trial court's order, and now reverse.[3]

## II

As enacted in 1982 and at the time of the original Olesiewicz trial, Sec. c(4)(a) of the Act provided that "[t]he aggravating factors which may be found by the jury or the court are: (a) the defendant has previously been convicted of murder ..." In 1985, the Legislature amended Sec. c(4)(a) to read "[t]he defendant has been convicted, at any time, of another murder. For purposes of this section, a conviction shall be deemed final when sentence is imposed and may be used as an aggravating factor regardless of whether it is on appeal." *L.*1985, *c.* 178, § 2.

The legislative history of the 1985 amendments discloses that the amendments were made directly in response to this Court's decisions in *Biegenwald I, supra,* and *State v. Bey,* 96 *N.J.* 625 (1984). In *Biegenwald I,* the sole issue was whether during the penalty phase of a capital case the State could use as an aggravating factor under Sec. c(4)(a) a defendant's prior conviction for murder when the appeal of that conviction was not final. There we noted that the relevant language "has previously been convicted of murder" was unclear on its face, and simply did not "explicate the necessity for or degree of finality" that must attach to a prior conviction for its use pursuant to Section c(4)(a). 96 *N.J.* at 634–35. While recognizing that "our resolution of the question presented is not free from doubt," *id.*

---

[3]References hereafter to defendant's legal arguments include the arguments advanced by *amicus curiae,* Office of the Public Defender, and by defendant's private counsel, Glen J. Vida, Esq.

at 639, we held that a prior conviction could not be used as a Sec. c(4)(a) aggravating factor until appellate review of that conviction was final. Ultimately, however, we concluded, "this is a matter committed to the wisdom of the Legislature." *Id.* at 640. "[T]he Legislature," we wrote, "may clarify or modify the present scheme to the extent that our interpretation does not commend itself to some as yet unarticulated statutory purpose or policy." *Ibid.* The same issue was also present in *State v. Bey.*

The Legislature responded to these decisions by amending c(4)(a) in 1985. The legislative history of the 1985 amendment discloses that the Legislature specifically intended to permit the use of convictions on appeal to insure that serial killers do not evade the consideration of their multiple murder convictions as aggravating factors:

> In two recent decisions, *State v. Bey* and *State v. Biegenwald,* both decided on June 26 of this year, the New Jersey Supreme Court ruled that a defendant found guilty of murder cannot, pending the conclusion of direct appeal proceedings challenging the guilty verdict, be considered as "having been convicted" for sentencing purposes under the capital punishment statute.
>
> Prosecutors are concerned about this ruling because they feel that it will hamper the prosecution of so-called "serial murder[ers]," individuals who kill victims randomly in a series of unrelated crimes. When discovered, these murderers usually undergo a separate trial on each murder charge. Often a trial will begin while a prior conviction is still in the appeal process. Prosecutors are concerned that if prior convictions on appeal cannot be introduced, in effect the death penalty will not be able to be used against the type of murderer for which capital punishment was intended. The Senate committee amendments would permit the introduction of prior murder convictions while on appeal during the sentencing phase of a death penalty trial. It should be noted with regard to this amendment that the majority of states with capital punishment statutes do permit convictions on appeal to be introduced as prior convictions. [Statement of Assembly Judicial Committee to Senate No. 950, February 4, 1985, at 3.]

Although the Legislature's policy underlying the amendment of Sec. c(4)(a)—endorsing application of the factor to serial killers—favors allowing the use of the Ward conviction at the Olesiewicz resentencing, the amendment is not determinative of the issue. Defendant's appeal of his Ward murder conviction

has been finalized; hence, the specific issue that the 1985 amendment addressed is not present in this case.

Instead, we find that the Ward conviction is admissible under the original language of Sec. c(4)(a). This conclusion is supported by the other issue we decided in *State v. Bey*. There we held that the Sec. c(4)(a) language "has previously been convicted of murder" did not require that the previous conviction occur before the commission of the murder being tried in order to have it considered as an aggravating factor at the penalty phase of the capital case. *State v. Bey, supra,* 96 *N.J.* at 628–29.

In *Bey,* defendant argued that "previously" meant prior to the commission of the offense for which he was being tried. In rejecting that position, we stated:

> We find no legislative history, decisional law, or policy considerations to recommend defendant's interpretation. We are satisfied *that the status of the prior conviction at the time of its intended use—the penalty phase of the subsequent murder prosecution—is determinative.* The relevance of such a conviction ... inheres in the fact *that the conviction has occurred prior to the jury's consideration of the appropriate penalty to be imposed.* [*Id.* at 629 (emphasis added).]

Because the Ward conviction became final prior to the resentencing hearing for the Olesiewicz murder, under the terms of the original enactment it is relevant to "the jury's consideration of the appropriate penalty to be imposed." The amended language of Sec. c(4)(a) does not lead us to abandon this interpretation. The legislative statements accompanying S.950 are silent concerning the proper construction of the amended provision, which now reads "[t]he defendant has been convicted, *at any time,* of another murder." (emphasis added). Nonetheless, we believe that this language is merely a ratification of this Court's holding in *Bey* that prior convictions need not have been entered prior to the commission of the death-eligible murder. This reasoning is supported by the previously quoted statement accompanying S.950, in which the Legislature registered its concern that capital juries not be foreclosed from considering the most aggravating evidence against serial kill-

ers—their other murders—by procedural hurdles created because "these murderers usually undergo a separate trial on each murder charge." Adoption of this position furthers the Legislature's clear intent to prevent the frustration of the State's prosecution of serial murderers by allowing each successful prosecution of a serial murderer to inure to the State's benefit in a resentencing proceeding.

The cases in other jurisdictions support our decision here. We recognize that the relevance of other states' capital cases depend in part on the state's specific capital punishment statutes. Nevertheless, the reasoning behind these decisions as well as the Supreme Court decisions on this issue support our position that prior convictions entered after the original trial but before the resentencing proceeding should be considered by the jury as an aggravating factor.

The United States Supreme Court has held that there is no federal constitutional prohibition against a statute, like Sec. c(4)(a), that allows the state to introduce evidence of defendant's prior convictions in the penalty phase of a bifurcated capital sentencing proceeding. *See, e.g., Poland v. Arizona,* 476 *U.S.* 147, 150, 158, 106 *S.Ct.* 1749, 1752, 1756, 90 *L.Ed.*2d 123, 129, 134 (1986) (both majority and dissent note without comment that the prosecutor alleged as an additional aggravating circumstance against one defendant a felony conviction arising after the first penalty proceeding); *Zant v. Stephens,* 462 *U.S.* 862, 886, 103 *S.Ct.* 2733, 2747, 77 *L.Ed.*2d 235, 255–56 (1983); *Gregg v. Georgia,* 428 *U.S.* 153, 165 n. 9, 193–95, 96 *S.Ct.* 2909, 2921 n. 9, 2934–36, 49 *L.Ed.*2d 859, 870 n. 9, 886 (1976); *Biegenwald II, supra,* 106 *N.J.* at 53–54 n. 7.

Other jurisdictions have specifically allowed the use on remand of a conviction gained after imposition of the death sentence that is being retried. In *State v. Teague,* 680 *S.W.*2d 785, 789–90 (1984), the Supreme Court of Tennessee relied on a reading of its statute's "previously convicted" aggravating circumstance that paralleled this Court's reading in *Bey,* and

held that the defendant's "plea and conviction ... occurred after [his] first trial ... but before the re-sentencing hearing and, consequently, may be used as an aggravating factor." In reaching that conclusion, the Court noted that the important point was that the conviction be entered before the resentencing hearing. *See also State v. Adkins*, 725 *S.W.*2d 660, 665 (Tenn.) (conviction of defendant for aggravated assault obtained after defendant's first trial for murder was properly admitted in resentencing hearing as "previous conviction," in support of aggravating circumstances), *cert.* den., —— *U.S.* ——, 107 *S.Ct.* 2491, 96 *L.Ed.*2d 383 (1987); *cf. Oats v. State*, 446 *So.*2d 90, 94–95 (Fla.1984) (trial court erred in finding prior violent crime aggravating factor existed where prior conviction was later vacated; when prior crime was retried and conviction affirmed on appeal, however, it could again be presented at resentencing).

Similarly, in *State v. Gretzler*, 135 *Ariz.* 42, 659 *P.*2d 1, *cert.* den., 461 *U.S.* 971, 103 *S.Ct.* 2444, 77 *L.Ed.*2d 1327 (1983), the Supreme Court of Arizona upheld the use at resentencing of a conviction entered after the first sentencing trial, holding that "[c]onvictions entered prior to a sentencing hearing may ... be considered regardless of the order in which the underlying crimes occurred ... or the order in which the convictions were entered." 135 *Ariz.* at 57 n. 2, 659 *P.*2d at 16 n. 2. The court relied on its view that the purpose of the sentencing hearing " 'is to determine the character and propensities of the defendant.... Revelation of subsequent lawless acts ... would help to attain the objectives of the sentencing statute.' " *Id.* (quoting *State v. Valencia*, 124 *Ariz.* 139, 141, 602 *P.*2d 807, 809 (1979)); *see Richmond v. Ricketts*, 640 *F.Supp.* 767 (D.Ariz. 1986) (conviction for first degree murder that could not have been presented at trial was admitted at resentencing hearing as an aggravating circumstance); *State v. Richmond*, 136 *Ariz.* 312, 666 *P.*2d 57 (prior murder conviction entered against defendant subsequent to conviction in present case was proper aggravating circumstance in resentencing proceeding), *cert.*

den., 464 *U.S.* 986, 104 *S.Ct.* 435, 78 *L.Ed.*2d 367 (1983); *Jones v. State*, 381 *So.*2d 983, 994 (Miss.1980) (words "previously convicted" applied so that defendant's armed robbery conviction entered after the murder was committed could be considered as an aggravating factor during sentencing phase of murder case; "the legislature undoubtedly intended a weighing of both [aggravating and mitigating factors] at the time of sentencing so the past behavioral patterns likely to affect the defendant's future behavior may be evaluated by the jury in deciding whether the defendant will live or die").

Defendant also maintains that the application of amended Sec. c(4)(a) in his case constitutes an impermissible *ex post facto* law. His Ward murder conviction is final. Thus, we find it to be admissible under the *original* Sec. c(4)(a) statutory language. Consequently, there is no possible *ex post facto* issue in this case because the amended provision is not before us.

## III

■ We also conclude that the admission of the Ward conviction as evidence of aggravating factor c(4)(a) does not violate the double jeopardy clauses of the Federal and State constitutions. The fifth amendment guarantee against double jeopardy protects criminal defendants (1) against a second prosecution for the same offense after acquittal; (2) against a second prosecution for the same offense after conviction; and (3) from multiple punishments for the same offense. *North Carolina v. Pearce*, 395 *U.S.* 711, 89 *S.Ct.* 2072, 23 *L.Ed.*2d 656, 665 (1969); Note, "Twice in Jeopardy," 75 *Yale L.J.* 262, 265–66 (1965). In *North Carolina v. Pearce*, the Supreme Court held that there was no constitutional limitation if on retrial a court imposes a harsher sentence than imposed after the first conviction. The Court observed that this was a long-established principle of double jeopardy. *Id.* at 719, 89 *S.Ct.* at 2077, 23 *L.Ed.*2d at 666; *Stroud v. United States*, 251 *U.S.* 15, 40 *S.Ct.* 50, 64 *L.Ed.* 103 (1919). The fundamental principle, the Court wrote, rests "ulti-

mately upon the premise that the original conviction has, at the defendant's behest, been wholly nullified and the slate wiped clean." *North Carolina v. Pearce, supra,* 395 *U.S.* at 721, 89 *S.Ct.* at 2078, 23 *L.Ed.*2d at 667. However, the Court held that if the imposition of the greater sentence results from the vindictiveness of a sentencing court against a defendant exercising his right of appeal, there may be a violation of the due process clause of the fourteenth amendment. *Id.* at 725, 89 *S.Ct.* at 2080, 23 *L.Ed.*2d at 669–70. To assure that such vindictiveness is not a motivation, the trial court, in imposing a more severe sentence at the subsequent trial, must set forth its reasons. Such reasons should be based on "objective information concerning identifiable conduct" on the defendant's part. *Id.* at 726, 89 *S.Ct.* at 2081, 23 *L.Ed.*2d at 670.

In *Bullington v. Missouri,* 451 *U.S.* 430, 443, 101 *S.Ct.* 1852, 1860, 68 *L.Ed.*2d 270, 281 (1981), the Supreme Court held a death sentence could not be imposed on retrial of a defendant who had successfully appealed a conviction of life imprisonment. The Court reasoned that the sentence of life imprisonment at the first trial meant that a jury had "acquitted" defendant of what was necessary to impose a death sentence. *Id.* at 446, 101 *S.Ct.* at 1862, 68 *L.Ed.*2d at 284; *see also Arizona v. Rumsey,* 467 *U.S.* 203, 104 *S.Ct.* 2305, 81 *L.Ed.*2d 164 (1984) (followed *Bullington* and held that double jeopardy clause prohibited state from sentencing defendant to death after life sentence he received was set aside on appeal because of trial court's error of law).

In *Biegenwald II, supra,* 106 *N.J.* at 68, we distinguished *Bullington* from that case by stating that "retrial of the instant case on the issue of penalty would result in no escalation in the severity of the potential punishment," since defendant received the death sentence at his first trial. We now reaffirm the rule adopted in *Biegenwald II,* and required by *Bullington,* that a defendant who receives life imprisonment at his first capital murder trial, cannot at his resentencing

proceeding receive the death sentence. *Ibid.* Nevertheless, as we stated in *Biegenwald II:*

> The only constitutional restriction applied to retrials in criminal cases is that the defendant may not be subject to punishment beyond that imposed in the first trial, and *since death was the verdict in the first trial that issue is immaterial here.*
>
> [*Id.* at 72 (emphasis added).]

Specifically, in discussing double jeopardy we held that "[r]esentencing cannot be considered double-jeopardy where the first sentence was a death sentence and the evidence was sufficient." *Id.* at 68. We also noted, however, that "[t]his does not mean that the State can charge any aggravating factors at resentencing that were not found by the jury in the first sentencing phase." *Ibid.* Thus, the fact that a defendant at the original capital trial received the death sentence does not automatically mean that at defendant's resentencing, the State is not constrained by principles of double jeopardy and fundamental fairness.

Courts recognize that there is a distinction between the sentencing procedure in a capital case and sentencing in a noncapital case. For example, in *Bullington* and *Rumsey*, the Supreme Court based its decisions on the analogy drawn between an "acquittal at trial" and "acquittal of death at sentencing." In *Poland v. Arizona,* 476 *U.S.* 147, 106 *S.Ct.* 1749, 90 *L.Ed.*2d 123 (1986), the Supreme Court interpreted *Bullington* and *Rumsey* as adopting the general *Pearce* principle that a convicted defendant may be constitutionally subject to greater punishment on retrial, unless a jury or an appellate court decides that the prosecution has not proved its case. In *Poland,* the Supreme Court held that the double jeopardy clause did not bar a further capital sentencing proceeding where the reviewing court found the evidence insufficient to support the only aggravating factor on which the sentencing judge relied but did not find the evidence insufficient to support the death penalty. *Id.* at 156–57, 106 *S.Ct.* at 1756, 90 *L.Ed.*2d at 133.

The majority and dissent in *Poland v. Arizona* both recognized that the analogy between "acquittal at trial" and "acquittal of death at sentencing" is not perfect. *Id.* at 159–60, 106 *S.Ct.* at 1757, 90 *L.Ed.*2d at 132; *id.* at 159, 106 *S.Ct.* at 1757. 90 *L.Ed.*2d at 135 (Marshall, J., dissenting). All the justices in *Poland* found that the issue in a capital sentencing proceeding is whether death is the appropriate punishment and that the "offense" for which the defendant receives his "conviction" or "acquittal" is that of the "appropriateness of the death penalty, not the elements of any particular aggravating factor." *Id.* at 160, 106 *S.Ct.* at 1757, 90 *L.Ed.*2d at 135 (Marshall, J., dissenting). Both the majority and dissenting opinions rejected a view of capital sentencing as a set of mini-trials on each aggravating factor. *Id.* at 155–57, 106 *S.Ct.* at 1755–56, 90 *L.Ed.*2d at 132–133; *id.* at 159–61, 106 *S.Ct.* at 1757–58, 90 *L.Ed.*2d at 135–136 (Marshall, J., dissenting). The *Poland* dissent is based on the view that because the evidence of "depravity," the *sole* basis initially offered by the trial court to support its "conviction" of petitioners was insufficient as a matter of law, the insufficiency constituted an "acquittal" that barred reimposition of the death penalty. Thus, the relevant issue, as both opinions in *Poland* make clear, is whether the sentencing jury or judge has decided that the State has not proved its case *for the death penalty* and hence has "acquitted" the defendant of the appropriateness of that penalty.

We also recognize that sentencing in a capital proceeding under the Act calls for different treatment from that in the ordinary sentencing proceeding. *Biegenwald II, supra,* 106 *N.J.* at 60. Moreover, our construction of the Act "is based to some extent on the functional similarity of aggravating factors and the weighing process itself to the traditional proof of 'elements of an offense.' " *Id.* at 59, 524 *A.*2d 130. Nevertheless, we recognize that such an analogy is not perfect.

In *Biegenwald II,* we specifically discussed the admission of new evidence on an aggravating factor found by the sentencing jury at the original trial. In that case, the sentencing jury at

the trial found aggravating factors c(4)(a) and c(4)(c). We held that at Biegenwald's resentencing proceeding (at issue in this case) the State could not present evidence that an "aggravated battery" or "torture" of the victim occurred because under *State v. Ramseur*, 106 *N.J.* 123, 207–11, the evidence for those elements of c(4)(c) presented at trial was insufficient to go to the jury. Consequently, we concluded that to allow the State another opportunity to present that evidence would violate fundamental double jeopardy principles. *Biegenwald II, supra*, 106 *N.J.* at 51 (citing *State v. Tropea*, 78 *N.J.* 309, 36 (1978)). Nevertheless, we held that on retrial the jury would be entitled to consider whether the evidence of "depravity of mind" was sufficient to justify imposition of the death penalty based on that element in Sec. c(4)(c). In reaching that conclusion, we drew from *Poland v. Arizona:*

> [T]he Double Jeopardy Clause does not require the reviewing court, if it sustains [the] claim [that the evidence was as a matter of law insufficient to support the aggravating circumstances on which defendant's death sentence was based], to ignore evidence in the record supporting another aggravating circumstance which the sentencer has erroneously rejected. [*Poland v. Arizona*, 476 *U.S.* 147, 157, 106 *S.Ct.* 1749, 1756, 90 *L.Ed.*2d 123, 133 (1986).]

We concluded, in *Biegenwald II*, that both the State and the defendant could present new evidence:

> [T]he State and the defense are free to present new evidence, testimony or documentation not presented at the original sentencing proceeding, and ... the new jury may reach conclusions concerning aggravating factors and mitigating factors different from and inconsistent with the findings at the original sentencing proceeding. In other words, neither side is assured, at the new trial, of the "benefits" gained in the original trial.
>
> [*Biegenwald II, supra*, 106 *N.J.* at 72.]

The State asserts that since the original sentencing jury found aggravating factor c(4)(a) on the basis of defendant's 1959 murder conviction, evidence of defendant's Ward murder conviction is merely additional evidence of a factor already proven and found. Thus, the State contends, it should be admitted at resentencing. It is clear, of course, that the State did not "hold back" the evidence of the Ward murder conviction since the Ward conviction was not in existence at the trial.

Defendant, however, argues that because of the weighing process in a capital sentencing proceeding, evidence of a subsequent murder conviction constitutes a *new* aggravating factor, not simply additional evidence of an aggravating factor already found. Thus, defendant submits, the jury will count factor c(4)(a) twice when it weighs the aggravating factors against the mitigating. Implicit in defendant's reasoning is the conclusion that new aggravating factors not alleged at the original trial may not be alleged at resentencing. The State disagrees, and argues instead that all we held in *Biegenwald II* was that the State may not assert at resentencing any aggravating factor specifically rejected by the first sentencing phase jury. Thus, the State maintains, it may proffer new factors at resentencing.

There is no federal constitutional prohibition of seeking on resentencing an aggravating factor not found at the first sentencing phase where defendant is sentenced to death at the conclusion of the first sentencing phase. *Poland v. Arizona*, *supra*, 476 *U.S.* 147, 106 *S.Ct.* 1749, 90 *L.Ed.*2d 123; *Knapp v. Cardwell*, 667 *F.*2d 1253 (9th Cir.1982) (evidence of both aggravating and mitigating circumstances may be introduced at a resentencing hearing even if evidence developed or discovered after original sentencing hearing or not introduced there for some other reason; there is no such thing as an "acquittal" from an aggravating circumstance in the penalty phase); *Pickens v. State*, 292 *Ark.* 362, 730 *S.W.*2d 230 (1987) (at resentencing State could present as additional relevant evidence testimony of witness not present at original trial); *Hopkinson v. State*, 664 *P.*2d 43, 70–71 (Wyo.1983) (statutory aggravating circumstances found not to exist in first trial could be submitted and found to exist at resentencing, without subjecting defendant to double jeopardy); *Davis v. State*, 242 *Ga.* 901, 252 *S.E.*2d 443 (1979) (no double jeopardy violation in submitting an additional aggravating circumstance to jury for its consideration in resentencing trial).

Thus, the cases largely reject the claim that introduction of a new aggravating factor at resentencing constitutes double jeopardy. Defendant also raises a fundamental fairness claim, however. He urges that even though the first jury's failure to find an aggravating factor may not constitute an "acquittal" for double jeopardy purposes, it would be fundamentally unfair to allow the State to pursue a new theory on which to gain a death sentence each time an appeal is successful.

Defendant's contention, to be sure, is generally consistent with this State's fundamental fairness jurisprudence. *See, e.g.,* *State v. Gregory,* 66 *N.J.* 510 (1975) (requiring joinder of known offenses based on same conduct, arising from same criminal episode); *State v. Godfrey,* 139 *N.J.Super.* 135 (App.Div.1976) (State, which has knowledge of facts of case, cannot prosecute under one statute and then, when it has lost, subject defendant to reprosecution under another statute).

Capital sentencing is a hybrid: the penalty phase of a capital prosecution has many similarities to a criminal guilt/innocence determination at trial. Despite any similarity to a basic criminal trial, however, a penalty phase in a capital prosecution is a sentencing proceeding, not a guilt/innocence determination proceeding. This is particularly apparent with a straightforward aggravating factor such as Sec. c(4)(a). All of the other seven aggravating factors relate to the specific circumstances of the capital crime that is the subject of the prosecution. Sec. c(4)(a) relates solely to the accused's *prior* acts, specifically any previous murder convictions. Therefore, aggravating factor c(4)(a) focuses on a defendant's character, and thus far more clearly resembles a standard sentencing factor than relevant evidence at a trial.

It is well established that individualized sentencing, the consideration of the individual characteristics of the offender and his crime, is "a constitutionally indispensable part of the process of inflicting the penalty of death." *Woodson v. North Carolina,* 428 *U.S.* 280, 304, 96 *S.Ct.* 2978, 2991, 49 *L.Ed.*2d

944, 961 (1976); *see also Lockett v. Ohio*, 438 *U.S.* 586, 605, 98 *S.Ct.* 2954, 2965, 57 *L.Ed.*2d 973, 990 (1978) ("an individualized decision is essential in capital cases"). In sentencing, the jury must have before it all the possible relevant information "regarding the individual characteristics of the defendant and his offense, including the nature and circumstances of the crime and the defendant's character, background, history, mental condition, and physical condition." *California v. Ramos*, 463 *U.S.* 992, 1006, 103 *S.Ct.* 3446, 3455, 77 *L.Ed.*2d 1171, 1184 (1983); *Jurek v. Texas*, 428 *U.S.* 262, 276, 96 *S.Ct.* 2950, 2958, 49 *L.Ed.*2d 929, 941 (1976).

In sentencing a defendant in a capital murder case, it is extremely important that the jury, in determining whether a defendant should receive the death penalty or life imprisonment, know that the defendant has previously been convicted of one or more murders. Indeed, previous convictions are always central to sentencing determinations. The Supreme Court has observed the importance of intervening convictions in resentencing proceedings in a noncapital case. In *Wasman v. United States*, 468 *U.S.* 559, 104 *S.Ct.* 3217, 82 *L.Ed.*2d 424 (1984), the Supreme Court held that imposition of a greater sentence on retrial of a passport offense because of the defendant's intervening conviction of a previously committed offense did not pose any constitutional issues. In finding no evidence of enhanced vindictiveness, the Court stated: "Consideration of a criminal conviction obtained in the interim between an original sentencing and a sentencing after retrial is manifestly legitimate. This amply rebuts any presumption of vindictiveness." *Id.* at 569–70, 104 *S.Ct.* at 3223, 82 *L.Ed.*2d at 434. Indeed, the court remarked, a trial judge's failure at sentencing to consider such convictions "would have been inappropriate." *Id.* at 570, 104 *S.Ct.* at 3223, 82 *L.Ed.*2d at 434. Justice Powell, in his concurring opinion in *Washman*, observed:

It would be difficult to think of an event or occurrence more relevant to the determination of a proper sentence than a criminal conviction obtained in the interim between an original sentencing and a sentencing following retrial.

[*Id.* at 574, 104 *S.Ct.* at 3225–26, 82 *L.Ed.*2d at 436.]

Biegenwald's prior murder convictions are an indispensable consideration in determining whether death is the appropriate punishment. For the jury to make a knowledgeable decision, it is essential that it know the prior murder conviction record of defendant. A juror who does not know this pertinent evidence may not form an accurate opinion of the defendant, and is ill-equipped to render an individualized decision on whether death is the appropriate punishment. Indeed, it is to enable the jury to consider the individual characteristics of a defendant that a defendant at a resentencing proceeding may produce evidence of any new mitigating factor and any new evidence of previously presented mitigating factors.

■■ Furthermore, there is no element of unfairness or surprise to the defendant since previous murder convictions have always been an aggravating factor under our statute. Since the passage of the Act in 1982, capital defendants have known that their prior murder convictions would be deemed an aggravating factor. Consequently, we find no merit in defendant's argument that because his resentencing procedure was not instituted until four years after his original sentence proceeding it is fundamentally unfair for the Court to consider as an aggravating factor his intervening Ward murder conviction. Likewise, we find no merit in the State's position that because the Court allowed the retroactive application of certain 1985 amendments that were favorable to defendants, it would be fundamentally unfair to the State not to allow the retroactive application of 1985 amendments not favorable to defendants.

In sum, we find that there is no constitutional limitation imposed on the use, in a resentencing phase, of a defendant's murder conviction, entered subsequently to defendant's original trial, as an aggravating factor under Sec. c(4)(a). Nor does this Court's doctrine of fundamental fairness prohibit its use at resentencing. Indeed, to prohibit the use of such a murder conviction would violate the Legislature's expressed intent to

use such convictions against serial murderers and be fundamentally unfair to the State.

A more difficult issue, however, is posed regarding the State's ability to introduce evidence of new aggravating factors. While we recognize that such an issue is not present in this case, it may arise in other resentencing proceedings.

The principle of fundamental fairness is based on the premise that the State with all the resources and power at its command should not be permitted to make repeated attempts to convict a person for the same offense, thereby compelling him or her to live in a continuing state of anxiety and insecurity. *State v. Tropea, supra,* 78 *N.J.* at 316; *State v. Gregory, supra,* 66 *N.J.* at 518; *State v. Godfrey, supra,* 139 *N.J.Super.* at 140–41. Certainly, the anxiety, expense, and ordeal suffered by a capital defendant in undergoing a new sentencing phase equals or exceeds the anxiety, expense, and ordeal suffered by a defendant in a retrial of a noncapital prosecution.

Given the punishment at stake in a capital prosecution, the State should be compelled to offer all its proof of any applicable aggravating factors against the defendant at his or her first trial. This is particularly so because under the Act, the presence of aggravating factors determines the death-eligibility of a defendant. We realize the great burden imposed on the State and its resources in conducting a capital prosecution. We do not mean to imply that the State will hold back evidence of an aggravating factor in the first trial. Indeed, we can envisage few instances in which evidence of a new aggravating factor, concerning the circumstances of the crime, would arise after the first trial.

At this time, however, we will not completely foreclose the State from introducing new aggravating factors at resentencing in what could be those truly rare occasions in which the introduction of new factors would not offend the principles of double jeopardy or fundamental fairness. The State will be

permitted to introduce new aggravating factors only when it proves to the court that it has discovered new evidence sufficient to establish at resentencing a new aggravating factor and that such evidence was unavailable and undiscoverable at the original trial despite the State's diligent efforts. When such rare occasions occur, we rely on the trial court to determine whether the admissibility of the new aggravating factor would violate the principles of double jeopardy or the doctrine of fundamental fairness.

## IV

With our disposition of the instant case, the following rules emerge regarding capital resentencing:

If a defendant is sentenced to life imprisonment at the original trial, he or she cannot be sentenced to death at the resentencing proceeding.

If the sentencing jury in the first trial specifically rejects an aggravating factor or an appellate court finds that the State failed to establish by sufficient evidence the existence of an aggravating factor at the original trial, the aggravating factor or that part of the aggravating factor rejected by the jury, cannot be used at the resentencing proceeding.

If the sentencing jury found an aggravating factor at the original trial, old and new evidence relevant to that aggravating factor may be admitted at the resentencing proceeding.

If the sentencing jury found proof of aggravating factor Sec. c(4)(a) at the original trial, or even if there was no Sec. c(4)(a) factor introduced at the original trial, evidence of a defendant's interim murder conviction may be admitted at resentencing to establish aggravating factor Sec. c(4)(a).

██ With regard to aggravating factors other than Sec. c(4)(a), only in extremely rare occasions will the State be allowed to submit evidence of a new aggravating factor, and only on proof that such evidence was unavailable to the State at the time of the original trial.

██ Finally, at a resentencing proceeding the defendant may submit new evidence on mitigating factors previously found and any evidence of any new mitigating factor. If such new evidence or a new factor is introduced, the State obviously may offer appropriate rebuttal evidence. The State, however, will be precluded from introducing a new aggravating factor under the guise of producing rebuttal evidence.

We reverse the order of the trial court.

O'HERN, Justice, concurring.

I concur in the judgment of the Court and its opinion except to the extent that the opinion approves the reasoning of *Poland v. Arizona*, 476 *U.S.* 147, 106 *S.Ct.* 1749, 90 *L.Ed.*2d 123 (1986).

HANDLER, Justice, dissenting.

During the sentencing phase of this 1983 capital prosecution, the State introduced as an aggravating factor pursuant to *N.J.S.A.* 2C:11–3c(4)(a) a prior murder conviction dating from 1959. Errors unrelated to this evidence led to the reversal of the death penalty. *State v. Biegenwald*, 106 *N.J.* 13 (1987) (*Biegenwald (II)*). The State is proceeding with a resentencing trial, in which it again seeks the death penalty. In support of aggravating factor c(4)(a), it has attempted to introduce, in addition to the 1959 conviction, a 1984 conviction of defendant for the murder of William Ward. The Ward conviction did not

become final until May 1987, after defendant was already sentenced to death and after his sentence had been vacated, but before the resentencing trial could be scheduled. The trial court rejected this evidence for resentencing purposes, prompting the State to take this interlocutory appeal. The appeal raises the issue of whether the State may introduce, as evidence supporting aggravating factor c(4)(a), a murder conviction that became final only after the death sentence now being retried was imposed. The Court reverses the trial court's ruling, and holds that this subsequent murder conviction is permissible evidence of aggravating factor c(4)(a).

As originally enacted in 1982, section c(4)(a) allowed the State in a death sentencing trial to introduce as evidence of an aggravating factor that the defendant "has previously been convicted of murder." This language was amended in 1985, however, to allow the State to introduce evidence that the defendant was convicted, "at any time," of another murder. L.1985, c. 178. The Court now reads the language of the original enactment to allow the use of the 1984 conviction at sentencing. I disagree. In my view, a fair reading of the language of the original enactment precludes the use of the 1984 conviction as evidence of a murder conviction "previous" to the 1983 murder conviction. Furthermore, the express intent of the Legislature that the amended version of c(4)(a) be applied prospectively should foreclose the use of the 1984 conviction at resentencing as a conviction obtained "at any time." Most important, I believe that the Court's ruling in this case runs contrary to principles of fundamental fairness that should preclude the use of the 1984 conviction in these circumstances. Accordingly, I dissent.

## I.

The threshold question on this appeal is which version of c(4)(a) applies: the original enactment, which contemplated murders of which the defendant had been convicted "previous-

ly"; or the 1985 amendment, which contemplates murder convictions obtained "at any time." The majority accepts the argument that given the prospective nature of the 1985 amendment, the statute applies as originally enacted; the majority proceeds, however, to read "previously" to mean "previously" to a sentencing hearing scheduled "at any time."

In doing so, the majority relies on the decisions of this Court in *State v. Bey*, 96 *N.J.* 625 (1984), and in *State v. Biegenwald*, 96 *N.J.* 630 (1984) (*Biegenwald (I)*). In those companion cases, this Court rejected the argument advanced by defendants that "previously" as used in c(4)(a) before its amendment meant a conviction that occurred prior to the commission of the offense for which the defendant is then being tried. The Court held instead

> that the status of the prior conviction at the time of its intended use—the penalty phase of the subsequent murder prosecution—is determinative. The relevance of such a conviction ... inheres in the fact that the conviction has occurred prior to the jury's consideration of the appropriate penalty to be imposed. [*Bey, supra,* 96 *N.J.* at 629.]

The Court concludes, in this case, that this passage from *Bey* compels its conclusion that "previously" means "previous" to any resentencing.[1]

I reject the Court's reasoning. Its result does not follow ineluctably from *Bey* and *Biegenwald (I);* those cases considered whether, as between the commission of the crime and

---

[1]The Court finds additional support for its interpretation from cases of other states that have allowed the use, on remand, of a conviction gained after the death sentence that is being retried was imposed. *Ante* at 530–531. *See, e.g., Richmond v. Ricketts,* 640 *F.Supp.* 767 (D.Ariz.1986); *State v. Richmond,* 136 *Ariz.* 312, 666 *P.2d* 57 (*Ariz.*), *cert. denied,* 464 *U.S.* 986, 104 *S.Ct.* 435, 78 *L.Ed.2d* 367 (1983); *State v. Gretzler,* 135 *Ariz.* 42, 659 *P.2d* 1 (Ariz.), *cert.* denied, 461 *U.S.* 971, 103 *S.Ct.* 2444, 77 *L.Ed.2d* 1327 (1983); *Oats v. State,* 446 *So.2d* 90, 94–95 (Fla.1984); *State v. Teague,* 680 *S.W.2d* 785, 789–90 (Tenn. 1984). As in most contexts involving capital statutes, however, the extent to which the holdings of other states are transferable is problematic. Different standards and degrees of protection—both statutory and judicial—exist from state to state, dispelling the authoritative value of one state's rule for another state.

the *initial* penalty phase following conviction for it, the "previously been convicted" language more likely referred to the former or the latter. The context of another, subsequent penalty proceeding simply was not before the Court or within its contemplation; viewed in context, it is equally logical to conclude that "previously been convicted," as construed in *Bey* and *Biegenwald (I)*, meant prior to the initial penalty phase, not, as the majority would have it, prior to any resentencing proceeding. Given the ambiguity of the language of the provision as enacted, and the differing context in which *Bey* and *Biegenwald (I)* were decided, I believe that "previously been convicted" should be construed to mean prior to the initial penalty phase.

In addition to adhering more closely to the context of the cases, such a reading of this Court's *Bey* and *Biegenwald (I)* precedents would be consistent with this Court's decision, from the inception of the capital punishment statute, to opt for the most punctilious construction of ambiguous statutory provisions where those provisions relate to the State's decision to take life. Thus, we have ruled that the ambiguous language of aggravating factor of c(4)(c) must be narrowly construed to encompass only particular kinds of conduct. *State v. Ramseur*, 106 *N.J.* 123, 197–211 (1987). We have held that the prior conviction aggravating factor of c(4)(a), as originally enacted, became final only on the completion of the appellate process. *See State v. Bey, supra*, 96 *N.J.* 625; *Biegenwald (I), supra*, 96 *N.J.* 630. Ambiguity was resolved in favor of heightened protection when we interpreted the statute as prescribing a non-unanimous determination as a possible verdict. *State v. Ramseur, supra*, 106 *N.J.* at 300–01. Indeed, we have gone so far as to determine, in the face of seemingly contrary language, that a defendant cannot be sentenced to death unless aggravating factors outweigh mitigating factors beyond a reasonable doubt. *State v. Biegenwald (II), supra*, 106 *N.J.* at 65–67. *See also State v. Koedatich*, 98 *N.J.* 553 (1984) (construing the direct appeal that is provided by the statute as a mandatory

appeal); *State v. McCrary*, 97 *N.J.* 132 (1984) (implying a statutory duty on the State to notify a defendant of its reliance on particular aggravating factors with the opportunity for the defendant to challenge that showing); *State v. Davis*, 96 *N.J.* 611 (1984) (establishing a liberal standard for admissibility of evidence of mitigating factors while conventional rules of evidence remained applicable to aggravating factors).

I am not dissuaded from this interpretation by the Legislature's policy statement accompanying S.950, which became the amendment of c(4)(a). The preamble to both the Senate and the Assembly versions of S.950 stated: "In enacting the amendments contained in this bill, the intent of the Legislature is to effect only prospective changes. The amendments are not intended to apply retrospectively or to affect cases now on appeal." Because the amendment was enacted subsequent to the 1984 Ward conviction, and this case was "on appeal," it is hard to escape the conclusion that its terms were not intended to be applicable to this case.

Furthermore, with respect to the use of new language, "at any time," in lieu of "previously," to define "convictions," the 1985 amendment reflects, if anything, not a clarification, as the majority insists, but a *change* in the policy of the original enactment and this Court's decisions in *Bey* and *Biegenwald (I)*. It strains credulity to insist that the change from "previously been convicted" to "convicted at any time" represents a mere clarification, and not a substantive change; the plain meaning of the words belies any such suggestion. Indeed, the legislative statements are silent with respect to the proper construction of "at any time." It is thus plausible to conclude that this language was intended to be a simple ratification of this Court's holding in *Bey*, that the prior conviction need not have been entered prior to the *commission* of the death-eligible murder. The conclusion, therefore, that the policy change reflected in the amendment to c(4)(a) applies in construing the meaning of the original enactment, and means that under the

provisions as first enacted the prior conviction need not have been entered prior to the original sentence for the death-eligible murder, simply has no foundation in the language or history of the enactment. Principles interpretation of the capital murder-death penalty statute reasonably requires that the Legislature's provisions be narrowly construed when such provisions are ambiguous. In the absence of a clear statutory prescription, this Court is obliged, in my opinion, to resolve reasonable doubt in favor of the accused.[2]

In sum, I believe that fundamental fairness should preclude the State from using the Ward conviction as a "prior conviction" at the resentencing for the Olesiewicz murder. While such a construction is within the literal comprehension of this Court's decision in *Bey*, it was almost certainly not considered in *Bey* and would have the effect proscribed by this Court's

---

[2]I disagree with the majority's result for a second reason. This Court held, in *Bey* and in *Biegenwald (I), supra,* 96 *N.J.* at 637, , that a murder conviction was not considered "final" until no direct appeals were pending, and thus that a conviction whose appeals were pending could not be used to satisfy c(4)(a). Under this interpretation of c(4)(a), which the majority is using, the State could not have used this conviction to satisfy c(4)(a) for the 1983 conviction at any time prior to May 28, 1987, when it became final. Only because this Court did not resolve defendant's appeal of his death sentence until shortly before the Ward conviction became final, and only because resentencing could not be scheduled before the Ward conviction became final, is this conviction available now to the State.

The Court's allowance of the use of the Ward conviction in these circumstances runs directly counter to this Court's fundamental fairness jurisprudence, which has consistently foreclosed the State from benefiting—to the defendant's detriment—from accidents of procedure that might otherwise operate to expose defendants to further or more harsh prosecution. *See State v. Biegenwald (II), supra,* 106 *N.J.* at 62 (defendants sentenced to death before the capital punishment act was amended to require proof beyond a reasonable doubt at sentencing must be resentenced, as a matter of fundamental fairness, under this more difficult standard of proof); *State v. Godfrey,* 139 *N.J.Super.* 135, 140 (App.Div.) (fact that State, with knowledge of facts, prosecuted under one statute and not another for which defendant could be prosecuted, bars re-prosecution under second statute as a matter of fundamental fairness), certif. denied, 73 *N.J.* 40 (1976).

fundamental fairness decisions.[3]

## II.

A further issue warrants discussion. I agree that the prohibition of seeking on resentencing an aggravating factor not found at the first sentencing is not compelled by the federal constitution where the defendant was sentenced to death, *Poland v. Arizona*, 476 *U.S.* 147, 106 *S.Ct.* 1749, 90 *L.Ed.*2d 123 (1986); *Knapp v. Cardwell*, 667 *F.*2d 1253, 1264–65 (9th Cir.), *cert.* denied, 459 *U.S.* 1055, 103 *S.Ct.* 473, 74 *L.Ed.*2d 621 (1982); *cf. Singleton v. Lockhart*, 653 *F.Supp.* 1114, 1143 (E.D.Ark.1986) (where jury's reliance on sole aggravating circumstance was invalidated, state could not seek the death penalty despite possibility that evidence would support an aggravating factor not found or sought at first sentencing). Nevertheless, principles of fundamental fairness, if not state constitutional doctrine, call for this result. In my opinion, even though the jury's failure to find an aggravating factor does not constitute an "acquittal" for double jeopardy purposes, it would be fundamentally unfair to allow the state a potentially new theory on which to gain a death sentence each time an appeal is successful.

---

[3] I appreciate that the majority does not rest its holding on the applicability of the current amendment of c(4)(a), or on the inapplicability of constitutional *ex post facto* principles. This is entirely reasonable, because the 1985 amendment was made entirely prospective. *See* discussion *supra* at 528. Nevertheless, in light of the majority's use of the statute as amended to elucidate the statute as enacted, it is appropriate to emphasize that the spirit that animates *ex post facto* principles should strongly predispose the Court against the application of the current amended statute to the anticipated resentencing in this case. *See State v. Correll*, 148 *Ariz.* 468, 715 *P.*2d 721, 734 (1986) (application of amendment to capital statute providing that "defendant has been convicted of one or more homicides ... which were committed during the commission of the offense" held to violate *ex post facto* clause where amendment passed after commission of crime); *State v. Jordan*, 440 *So*2d 716, 719 (La.1983) (forbidding use of prior convictions as an aggravating circumstance because amendment sanctioning use of such evidence constituted substantive change in law and was enacted subsequent to commission of murder). The majority's reading of the original provision expands the reach of the provision and achieves a result identical to the result that would obtain if the statute were applied as amended, a result that, in my opinion, would violate *ex post facto* principles.

I agree with the majority's analysis that the aggravating factors other than c(4)(a) relate primarily to the circumstances of the offense; I disagree, however, with the majority's assessment of the consequences of that fact. In my opinion, because the factors other than c(4)(a) relate to the circumstances of the offense, all of which should have been known to the State at the initial penalty hearing, the logic of such cases as *State v. Gregory*, 66 *N.J.* 510 (1975), and *State v. Godfrey, supra,* 139 *N.J.Super.* at 140, should preclude the State from introducing new aggravating factors relating to the circumstances of the case. The issue should not, in my opinion, be left to the discretion of trial courts.

I emphasize, however, that my disagreement with the majority is a narrow one. Thus, I endorse the majority's conclusion that the State should be generally precluded from introducing new aggravating factors at resentencing, disagreeing only with the majority's unwillingness to follow the logic of this decision and preclude the use of any such new aggravating factors. Further, I acknowledge that the future application of aggravating factor c(4)(a), as amended, can allow the introduction of murder convictions entered "at any time"—even those entered after an original death sentence and before a resentence. As recognized by the majority, *ante* at 538, unlike the other aggravating factors, which relate to the circumstances of the crime and the facts of which are available to the State, factor c(4)(a) relates to the character of the accused and is, as a result, less analogous to the Court's fundamental fairness cases. In the absence of constitutional compulsion, I agree that the legislature's expressed intent to allow the use of such convictions prospectively against serial murderers has a basis in reason.

### III.

In sum, I believe that the language of factor c(4)(a) applicable on resentencing is the language as originally enacted, which must be construed in these circumstances to preclude the use

under c(4)(a) of a conviction obtained a year after the initial penalty phase and not made final until four years after the initial penalty phase. To hold otherwise is to stray from this Court's well-established principle that it will interpret ambiguous provisions within the capital murder statute narrowly as a reflection of its commitment to fundamental fairness.

Justice O'HERN concurring in the result.

*For reversal*—Chief Justice WILENTZ and Justices CLIFFORD, POLLOCK, O'HERN, GARIBALDI and STEIN—6.

*For affirmance*—Justice HANDLER—1.