572 A.2d 622

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. JAMES
JEROLD KOEDATICH, DEFENDANT–RESPONDENT.

Argued October 23, 1989—Decided April 19, 1990.

514

*Joseph Connor, Jr.,* and *Thomas J. Critchley, Jr.,* Assistant Prosecutors, argued the cause for appellant (*Lee S. Trumbull,* Morris County Prosecutor, attorney).

*David A. Ruhnke,* Designated Counsel, argued the cause for respondent (*Alfred A. Slocum,* Public Defender, attorney).

The opinion of the Court was delivered by

STEIN, J.

In *State v. Koedatich,* 112 *N.J.* 225, 548 *A.*2d 939 (1988), *cert. denied,* —— *U.S.* ——, 109 *S.Ct.* 813, 102 *L.Ed.*2d 803 (1989), we affirmed defendant's conviction for the murder of Amie Hoffman but vacated his death sentence and remanded for a new penalty-phase hearing. The issue on this appeal is whether the State can offer evidence at the resentencing hearing of aggravating factors that were charged but that the jury in the first proceeding did not unanimously find to exist. The trial court concluded the State was barred from resubmitting those aggravating factors. We granted the State's motion for leave to appeal that ruling and now reverse.

I.

On November 23, 1982, eighteen-year-old Amie Hoffman was abducted from the Morris County Mall where she worked part-time. Two days later, police discovered her body in a water-retention tank located in a secluded area of Randolph Township. Medical evidence revealed that she had been sexually assaulted and then stabbed to death. The resulting police investigation culminated in the arrest of James Jerold Koedatich. In October 1984, a Morris County jury convicted Koedatich of several offenses including murder and sentenced him to death.[1]

At the penalty phase of the trial, the State charged four aggravating factors: (1) that defendant had previously been

---

[1] In addition to the conviction for capital murder, *N.J.S.A.* 2C:11–3(a)(1) and (2), Koedatich was convicted of felony murder, *N.J.S.A.* 2C:11–3a(3); kidnapping, *N.J.S.A.* 2C:13–1; aggravated sexual assault, *N.J.S.A.* 2C:14–2a; possession of a weapon for an unlawful purpose, *N.J.S.A.* 2C:39–4d; and possession of a weapon, *N.J.S.A.* 2C:39–5d.

convicted of murder, *N.J.S.A.* 2C:11–3c(4)(a) (defendant had been convicted of second-degree murder in Florida in 1971); (2) that the murder was committed while defendant was engaged in the commission of or flight from the commission of a sexual assault and kidnapping, *N.J.S.A.* 2C:11–3c(4)(g); (3) that the murder was committed for the purpose of escaping detection, *N.J.S.A.* 2C:11–3c(4)(f); and (4) that the murder was outrageously and wantonly vile, *N.J.S.A.* 2C:11–3c(4)(c).

The jury unanimously found that defendant had a prior murder conviction and that he killed Amie Hoffman in the course of a sexual assault and kidnapping. The jury was unable to agree unanimously with respect to the other two aggravating factors. The Penalty Phase Special Verdict Form revealed that eleven of the twelve jurors determined that the murder was "outrageously and wantonly vile," and eight determined that the murder was committed "to escape detection."

Defendant subsequently appealed both the conviction and the death sentence. Although this Court affirmed the underlying conviction, we vacated defendant's death sentence, finding reversible error in the penalty phase. 112 *N.J.* at 340, 548 *A.*2d 939. Specifically, we held that the trial court had erroneously charged the jury that the mitigating factors must outweigh the aggravating factors in order for the court to impose a sentence other than death. *Id.* at 325, 548 *A.*2d 939. Further, we held that the trial court had erred by requiring that the jury unanimously find the existence of mitigating factors. *Id.* at 326–27, 548 *A.*2d 939. Accordingly, we remanded the matter for a new penalty-phase hearing.

In September 1988, the State filed a Notice of Intention to Seek the Death Penalty at Resentencing, in which it relied on the same four aggravating factors charged in the initial sentencing proceeding. Defendant argued at resentencing that this Court's decisions in *State v. Biegenwald,* 106 *N.J.* 13, 524 *A.*2d 130 (1987) (*Biegenwald* II), and *State v. Biegenwald,* 110 *N.J.* 521, 542 *A.*2d 442 (1988) (*Biegenwald* III), preclude the

State from resubmitting both the "outrageously wanton and vile" and the murder "to escape detection" factors.[2] The trial court agreed, holding that those death-penalty decisions barred the State from charging any aggravating factors at resentencing that the jury in the first penalty phase did not unanimously find to exist.

## II.

We note that the Capital Punishment Act, *N.J.S.A.* 2C:11-3 (the Act), offers no specific guidance on the question whether aggravating factors not unanimously found to exist by the jury at the initial sentencing proceeding can be presented at resentencing following a remand. Nor have our prior decisions concerning the presentation of aggravating factors at resentencing dealt specifically with the issue raised by this appeal.

In *Biegenwald* II, *supra*, 106 *N.J.* 13, 524 *A.*2d 130, we affirmed defendant's conviction for the murder ·of Anne Olesiewicz, but reversed his death sentence because the trial court had improperly instructed the jury in the penalty phase. Accordingly, we remanded the case for a new sentencing proceeding, observing that "[r]esentencing cannot be considered double-jeopardy where the first sentence was a death sentence and the evidence was sufficient." *Id.* at 68, 524 *A.*2d 130.

At the initial penalty-phase proceeding in *Biegenwald* II, the jury unanimously found the existence of two aggravating factors: (1) that defendant had previously been convicted of murder, *N.J.S.A.* 2C:11-3c(4)(a); and (2) that "the murder was outrageously or wantonly vile, horrible or inhuman in that it

---

[2]Several months after being convicted of the Hoffman murder, defendant was convicted of the murder of Diedre O'Brien and sentenced to life imprisonment. In the *O'Brien* case, the jury did not unanimously find that defendant had previously been convicted of murder in Florida in 1971. Based on that finding, defendant also contended that the State was collaterally estopped from introducing the Florida conviction as an aggravating factor at resentencing. The trial court ruled that collateral estoppel was not· a bar, a ruling not challenged on this appeal.

involved torture, depravity of mind, or an aggravated battery to the victim." *N.J.S.A.* 2C:11–3c(4)(c) ("c(4)(c)"). We held that principles of double jeopardy barred the State from proving the existence of the "aggravated battery" or "torture" components of the c(4)(c) aggravating circumstance at resentencing because there was insufficient evidence in the record to support those components. 106 *N.J.* at 51, 524 *A.*2d 130. We noted, however, that the State would not be barred from offering evidence of "depravity of mind" to establish aggravating factor c(4)(c). *Id.* at 52, 524 *A.*2d 130.

In *Biegenwald* III, *supra*, 110 *N.J.* 521, 542 *A.*2d 442, the issue was whether the State could introduce as an aggravating factor at the resentencing hearing defendant's conviction for the murder of William Ward, which was obtained after the Olesiewicz conviction. We held that admission of the Ward conviction at resentencing complied with the double-jeopardy clauses of both the federal and state constitutions and with principles of fundamental fairness. *Id.* at 540–41, 542 *A.*2d 442. As dictum in that opinion, we offered this guideline:

> If the sentencing jury in the first trial specifically rejects an aggravating factor or an appellate court finds that the State failed to establish by sufficient evidence the existence of an aggravating factor at the original trial, the aggravating factor[,] or that part of the aggravating factor rejected by the jury, cannot be used at the resentencing proceeding. [*Id.* at 542, 542 *A.*2d 442.]

Neither *Biegenwald* II nor *Biegenwald* III, however, is dispositive of the issue before us. Therefore, we begin our analysis by considering the question in the context of double-jeopardy jurisprudence. Because we have held the double-jeopardy clauses of the state and federal constitutions to be substantially coextensive, *State v. DeLuca*, 108 *N.J.* 98, 102, 527 *A.*2d 1355 (1987); *State v. Dively*, 92 *N.J.* 573, 578, 458 *A.*2d 502 (1983); *State v. Barnes*, 84 *N.J.* 362, 370, 420 *A.*2d 303 (1980), we proceed with an overview of federal double-jeopardy law pertaining to sentencing issues.

The Supreme Court has recognized that the double-jeopardy clause of the fifth amendment embodies three distinct protections for criminal defendants:

It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense. [*North Carolina v. Pearce*, 395 *U.S.* 711, 717, 89 *S.Ct.* 2072, 2076, 23 *L.Ed.*2d 656, 664–65 (1965) (footnotes omitted).]

Constitutional protections against double jeopardy clearly preclude the retrial of a defendant who has been acquitted of the offenses with which he was charged. As the Court observed in *Green v. United States*, 355 *U.S.* 184, 187–88, 78 *S.Ct.* 221, 223, 2 *L.Ed.*2d 199, 204 (1957):

[T]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

■ Nevertheless, it is consistent with the guarantee against double jeopardy to retry a defendant who has succeeded in obtaining reversal of his conviction based on trial errors:

It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. [*United States v. Tateo*, 377 *U.S.* 463, 466, 84 *S.Ct.* 1587, 1589, 12 *L.Ed.*2d 448, 451 (1964).]

Where a defendant's conviction has been overturned due to insufficient evidence, however, principles of double jeopardy prohibit retrial. *Burks v. United States*, 437 *U.S.* 1, 98 *S.Ct.* 2141, 57 *L.Ed.*2d 1 (1978).

Defendants have sought to extend the significance accorded acquittal of a criminal offense to the imposition of a particular sentence. In *North Carolina v. Pearce, supra*, 395 *U.S.* 711, 89 *S.Ct.* 2072, 23 *L.Ed.*2d 656, the Court considered whether the imposition of a greater sentence, after conviction on retrial, was barred on double-jeopardy grounds. Reasoning that the "power to impose whatever sentence may be legally authorized" was a "corollary of the power" to retry a defendant whose conviction was set aside on appeal, the Court held that the prohibition against double jeopardy did not preclude the imposition of a harsher sentence on reconviction. *Id.* at 720, 89 *S.Ct.* at 2078, 23 *L.Ed.*2d at 666. The Court explained that the rationale for

its holding "rests ultimately upon the premise that the original conviction has, at the defendant's behest, been wholly nullified and the slate wiped clean." *Id.* at 721, 89 *S.Ct.* at 2078, 23 *L.Ed.*2d at 667.

The Court's unwillingness to equate acquittals with the imposition of a particular sentence was reaffirmed in *United States v. DiFrancesco,* 449 *U.S.* 117, 101 *S.Ct.* 426, 66 *L.Ed.*2d 328 (1980). Rejecting arguments that for double-jeopardy purposes "the imposition of the sentence is an 'implied acquittal' of any greater sentence," *id.* at 133, 101 *S.Ct.* at 435, 66 *L.Ed.*2d at 343, the Court upheld a provision of the Organized Crime Control Act that granted the government the right to appeal the sentences of "dangerous special offenders," as defined by that Act. *Id.* at 136, 101 *S.Ct.* at 437, 66 *L.Ed.*2d at 345. Thus, because of fundamental distinctions between the two, the Court has made clear that "the pronouncement of sentence has never carried the finality that attaches to an acquittal." *Id.* at 133, 101 *S.Ct.* at 435, 66 *L.Ed.*2d at 343.

Due to the unique features of penalty-phase proceedings in capital cases, the Court has modified its view on the distinction between trials and sentences, resulting in an exception to the "clean slate rationale" generally applicable to sentencing at retrial. In *Bullington v. Missouri,* 451 *U.S.* 430, 101 *S.Ct.* 1852, 68 *L.Ed.*2d 270 (1981), the Court considered whether a defendant who was convicted of murder and sentenced to life imprisonment in a bifurcated-capital proceeding could, after successfully appealing his conviction, be subjected to the death penalty on retrial. The Court observed that by enacting a capital-sentencing procedure that resembles a trial on the issue of guilt, Missouri explicitly requires the jury to determine whether the prosecution has "proved its case" for the death penalty:

The jury in this case was not given unbounded discretion to select an appropriate punishment from a wide range authorized by statute. Rather, a separate hearing was required and was held, and the jury was presented both a choice between two alternatives and standards to guide the making of that choice.

Nor did the prosecution simply recommend what it felt to be an appropriate punishment. It undertook the burden of establishing certain facts beyond a reasonable doubt in its quest to obtain the harsher of the two alternative verdicts. The presentence hearing resembled and, indeed, in all relevant respects was like the immediately preceding trial on the issue of guilt or innocence. It was itself a trial on the issue of punishment so precisely defined by the Missouri statutes. [*Id.* at 438, 101 *S.Ct.* at 1858, 68 *L.Ed.*2d at 278–79 (footnote omitted).]

By sentencing defendant to life imprisonment at the first trial, the jury effectively "'acquitted' defendant of whatever was necessary to impose the death sentence." *Id.* at 445, 101 *S.Ct.* at 1861, 68 *L.Ed.*2d at 283 (citation omitted); *see also Arizona v. Rumsey*, 467 *U.S.* 203, 211, 104 *S.Ct.* 2305, 2310, 81 *L.Ed.*2d 164, 171 (1984) (holding that double-jeopardy clause prohibited State from seeking death penalty at resentencing, where judge sentenced defendant to life imprisonment in the original penalty-phase proceeding).

In *Poland v. Arizona*, 476 *U.S.* 147, 106 *S.Ct.* 1749, 90 *L.Ed.*2d 123 (1986), the Court defined the contours of the "acquittal" analogy employed in *Bullington* and *Rumsey* as it applied to the resubmission at resentencing of an aggravating factor rejected at the original trial. In *Poland*, two brothers robbed a cash-delivery van and killed the two guards attending the van; the bodies were placed in weighted sacks and dumped into a lake. A jury convicted both defendants of capital murder. At the penalty-phase hearing, the State charged two statutory aggravating factors: (1) that defendants had "committed the offense as consideration for the receipt, or in expectation of the receipt, of [something] of pecuniary value"; and (2) that defendants had "committed the offense in an especially heinous, cruel, or depraved manner." The trial judge, sitting as sentencer, failed to find the existence of the "pecuniary gain" aggravating circumstance, believing it applied only to contract killings, but did find the existence of the "especially heinous, cruel, or depraved" factor. After performing the appropriate balancing procedure, the court sentenced defendants to death. On appeal, the Arizona Supreme Court reversed the convictions due to error in the guilt phase of the proceeding and remanded

for a new trial. With respect to the penalty phase, the court held that there was insufficient evidence to support the trial court's finding of the "especially heinous, cruel, or depraved" aggravating factor. The court also held that the "pecuniary gain" aggravating circumstance was not limited to situations involving contract killings and expressly ruled that that factor could be considered at resentencing.

Defendants were subsequently reconvicted of capital murder and sentenced to death. The trial judge found that the "pecuniary gain" and "especially heinous, cruel or depraved" aggravating factors were present in each defendant's case. On appeal, the Arizona Supreme Court again found insufficient evidence to support the existence of the "especially heinous, cruel, or depraved" aggravating factor. Concluding that there was sufficient evidence to support the "pecuniary gain" factor, however, the court upheld the respective death sentences.

The United States Supreme Court affirmed, observing that

[a]t no point during petitioners' first capital sentencing hearing and appeal did either the sentencer or the reviewing court hold that the prosecution had "failed to prove its case" that petitioners deserved the death penalty. Plainly, the sentencing judge did not acquit, for he imposed the death penalty. While the Arizona Supreme Court held that the sentencing judge erred in relying on the "especially heinous, cruel, or depraved" aggravating circumstance, it did not hold that the prosecution had failed to prove its case for the death penalty. [*Id.* at 154, 106 *S.Ct.* at 1754, 90 *L.Ed.*2d at 131–32.]

■■ In so holding, the Court rejected defendants' argument that the sentencing judge "acquitted" them of the "pecuniary gain" circumstance by not finding its existence in the initial sentencing proceeding, concluding that principles of double jeopardy did not bar consideration at resentencing of evidence relating to that circumstance:

We reject the fundamental premise of petitioners' argument, namely, that a capital sentencer's failure to find a particular aggravating circumstance alleged by the prosecution always constitutes an "acquittal" of that circumstance for double jeopardy purposes. Bullington indicates that the proper inquiry is whether the sentencer or reviewing court has "decided that the prosecution has not proved its case" that the death penalty is appropriate. *We are not prepared to extend Bullington further and view the capital sentencing hearing as a set of mini-trials on the existence of each aggravating circum-*

*stance. Such an approach would push the analogy on which Bullington is based past the breaking point.*

\* \* \* \* \* \* \* \*

*We hold, therefore, that the trial judge's rejection of the "pecuniary gain" aggravating circumstance in this case was not an "acquittal" of that circumstance for double jeopardy purposes, and did not foreclose its consideration by the reviewing court.* Furthermore, because the reviewing court did not find the evidence legally insufficient to justify imposition of the death penalty, there was no death penalty "acquittal" by that court. The Double Jeopardy Clause, therefore, did not foreclose a second sentencing hearing at which the "clean slate" rule applied. [*Id.* at 155–57, 106 *S.Ct.* at 1755–56, 90 *L.Ed.*2d at 132–33 (footnote omitted) (emphasis added).]

Although three Justices dissented in *Poland,* no member of the Court adopted the defendant's argument that principles of double jeopardy preclude the State from charging at resentencing aggravating factors not found to exist at the initial penalty-phase proceeding.[3] Therefore, under federal double-jeopardy doctrine, where a defendant who has been sentenced to death succeeds in having the sentence overturned on appeal, the "clean slate" rule of *Pearce* applies to the new sentencing proceeding. The State is permitted to resubmit aggravating factors at the new proceeding even if those factors were not found at the initial-sentencing proceeding, provided there is sufficient evidence in the record to sustain the original death sentence. *Poland v. Arizona, supra,* 476 *U.S.* 147, 106 *S.Ct.* 1749, 90 *L.Ed.*2d 123. Where a defendant was originally sentenced to life imprisonment, however, the State may not, consistent with principles of double jeopardy, seek the death penalty on remand because the State failed "to prove its case" for

---

[3]Justice Marshall filed a dissenting opinion in which Justices Brennan and Blackmun joined. The dissenters contended that the defendants in *Poland* could not be subjected to a second penalty proceeding because their death sentences in the first proceeding were based on an aggravating factor improperly relied on by the trial judge. *Id.* at 158–59, 106 *S.Ct.* at 1756–57, 90 *L.Ed.* at 134–35. Thus, the dissenters never addressed whether aggravating factors properly submitted to but rejected by the fact-finder at one penalty proceeding could be resubmitted at a second penalty hearing.

that sentence in the first proceeding. *Bullington v. Missouri, supra,* 451 *U.S.* 430, 101 *S.Ct.* 1852, 68 *L.Ed.*2d 270.

## III.

■ We have on several occasions demonstrated a willingness to read our state constitutional provisions more expansively than the federal counterpart where necessary to provide our citizens with enhanced protections. *See State v. Novembrino,* 105 *N.J.* 95, 519 *A.*2d 820 (1987); *State v. Williams,* 93 *N.J.* 39, 459 *A.*2d 641 (1983); *Right to Choose v. Byrne,* 91 *N.J.* 287, 450 *A.*2d 925 (1982); *State v. Hunt,* 91 *N.J.* 338, 450 *A.*2d 952 (1982). Because no distinct tradition of state-constitutional doctrine requires departure from federal decisions on this issue, we decline to view "the capital sentencing hearing as a set of mini-trials on the existence of each aggravating circumstance." *Poland v. Arizona, supra,* 476 *U.S.* 147, 155, 106 *S.Ct.* 1749, 1755, 90 *L.Ed.*2d 123, 132. We conclude, therefore, that a jury's failure to determine unanimously the existence of a statutory aggravating factor does not constitute an "acquittal" of that factor, barring its presentation at resentencing on double-jeopardy grounds.

The Capital Punishment Act, *N.J.S.A.* 2C:11–3, which governs the administration of the death penalty in this state, "calls for a bifurcated trial in which punishment is determined in a separate proceeding following the establishment of guilt." *State v. Ramseur,* 106 *N.J.* 123, 156, 524 *A.*2d 188 (1987). The capital-sentencing scheme delegates to jurors the sensitive task of determining whether a defendant convicted of capital murder will live or die. Indeed, the fact-finder's determination in the penalty phase of a capital proceeding focuses on whether death is the appropriate punishment for the defendant. As we explained in *State v. Bey,* 112 *N.J.* 123, 158, 548 *A.*2d 887 (1988) (*Bey* II),

[t]he vehicle through which the jury discharges its responsibility is the determination of the existence of aggravating and mitigating factors and the balancing of the former against the latter. In the sentencing phase, the jury is obliged to

determine, first, the existence of any aggravating factor or factors. The jury must find that at least one aggravating factor exists before the death penalty may be imposed. If the jury "finds that no aggravating factors exist * * * the court shall sentence the defendant pursuant to subsection b," which requires a term of imprisonment. If, however, the jury finds an aggravating factor exists, then it must determine whether any mitigating factors also exist. After making fact findings about the "existence or non-existence" of aggravating and mitigating factors, the jury must then make the normative judgment whether the aggravating outweigh the mitigating factors beyond a reasonable doubt. That decision, in effect, determines the appropriateness of the death penalty for the defendant.

In recognition of the fact that a finding with respect to the existence or non-existence of an aggravating factor will tip the delicate balance between life and death, the Act requires that the State prove the existence of aggravating factors beyond a reasonable doubt. *N.J.S.A.* 2C:11–3c(2)(a). Although the Act does not expressly mandate it, we have interpreted the Act to require that in order for an aggravating factor to be considered in the balancing process, the jurors must agree unanimously with respect to its existence. *See, e.g., Bey* II, *supra,* 112 *N.J.* at 159, 548 *A.*2d 887. Thus, the role of statutory aggravating factors in our capital-sentencing scheme is of critical importance to the jury's ultimate determination concerning the appropriate punishment to be imposed. We observed in *State v. Ramseur, supra,* 106 *N.J.* at 185–86, 524 *A.*2d 188, that the jury's consideration of statutory aggravating factors serves to narrow the class of death-eligible murderers as well as to guide the jury's discretion in determining the appropriateness of a death sentence.

Under our capital-sentencing scheme, a unanimous finding of the existence of any *one* of the statutory aggravating factors charged by the State could result in a death sentence, provided that the jury determines that that aggravating factor outweighs the mitigating factors beyond a reasonable doubt. Unlike the situation in guilt-phase deliberations, a jury charged with deciding the existence of several aggravating factors might not necessarily exhaust its deliberative capacity in an effort to achieve unanimity on all such factors if it should

determine that *one* aggravating factor, on which it does unanimously agree, outweighs the mitigating factors beyond a reasonable doubt. Thus, although we acknowledge the critical role of aggravating factors in deciding whether the death penalty is an appropriate punishment, we are unwilling to imbue a jury's non-unanimous decision with respect to an aggravating factor with the same reliability as attends a verdict of acquittal on a criminal charge. Instead, in the penalty-phase proceeding, a jury vote that is less than unanimous on an aggravating factor is a finding that that factor does not exist for purposes of its use in that proceeding.

Our dissenting colleagues disagree, emphasizing that "a non-unanimous verdict in a capital case is a verdict in every sense of the word," *post* at 545, 572 *A*.2d at 639 (O'Hern, J., dissenting); "The Court itself has recognized that a non-unanimous verdict constitutes a jury *verdict.*" *Post* at 538, 572 *A*.2d at 635 (Handler, J., dissenting.) In addition, Justice Handler reasons that because at least one aggravating factor must be found to exist to expose a defendant convicted of murder to capital punishment, the aggravating factors submitted to a jury are elements of the crime of capital murder. *Id.* at 533, 572 *A*.2d at 632. Applying traditional double-jeopardy principles, he asserts that "a retrial seeking the death penalty based on identical aggravating factors [not unanimously found at the first proceeding] is tantamount to a retrial for the *same* crime." *Post* at 534, 572 *A*.2d at 633. The issue cannot, however, be simplified and resolved so categorically. Because the jury must find one aggravating factor before the death penalty can be imposed, it is appropriate to consider aggravating factors as analogous to elements of other crimes. But in a capital-sentencing proceeding in which multiple aggravating factors are submitted to the jury, a finding that all such factors exist is *not* a prerequisite to a death sentence. In that context, the analogy to "elements of a crime" breaks down; the jury's non-unanimous finding on "extra" aggravating factors cannot be analo-

gized, for double-jeopardy purposes, to a determination that the State has failed to prove an essential element of a crime.

Similarly, although the Act authorizes a non-unanimous verdict in the sentencing proceeding, the statutory authorization refers to the jury's determination "whether the defendant should be sentenced to death * * *." See *N.J.S.A.* 2C:11–3c(1). On that question, both the statute and our cases clearly recognize that a non-unanimous verdict is permissible under the Act. See *State v. Ramseur, supra,* 106 *N.J.* at 312, 524 *A.*2d 188. Nevertheless, we have held that when a trial court in a capital-sentencing proceeding is first advised that a jury could not reach a unanimous verdict, the court should inquire whether the jury's report "indicated its final verdict or whether the jury wanted more time to deliberate." *State v. Hunt,* 115 *N.J.* 330, 380, 558 *A.*2d 1259 (1989); *State v. Ramseur, supra,* 106 *N.J.* at 302, 524 *A.*2d 188. That procedure, intended to assure that a jury had exhausted its deliberative capacity on the issue of life or death, would be completely unnecessary and inappropriate under circumstances where, as in the initial sentencing proceeding in this case, the jury was unanimous on the death sentence but non-unanimous only on two of four aggravating factors. Thus, although the Act authorizes non-unanimous verdicts in the sentencing phase, that authorization is far from decisive on the question whether a non-unanimous vote on two of four aggravating factors, under principles of double jeopardy, bars resubmission of those factors in a second sentencing proceeding.

We note that an overwhelming majority of jurisdictions that have considered the issue have also rejected double-jeopardy challenges to the introduction, at resentencing, of aggravating factors not unanimously found to exist in the initial sentencing proceeding. *See Rose v. State,* 461 *So.*2d 84 (Fla.1984) (trial court's reliance on aggravating factor at resentencing that was not found at initial proceeding did not violate double jeopardy), *cert. denied,* 471 *U.S.* 1143, 105 *S.Ct.* 2689, 86 *L.Ed.*2d 706 (1985); *Zant v. Redd,* 249 *Ga.* 211, 290 *S.E.*2d 36 (1982) (where

defendant's death sentence was overturned on appeal, State could resubmit at resentencing aggravating factors charged but not found to exist at original trial), *cert. denied,* 463 *U.S.* 1213, 103 *S.Ct.* 3552, 77 *L.Ed.*2d 1398 (1983); *State v. David,* 468 *So.*2d 1133 (La.1985) (jury finding that single aggravating factor exists does not amount to an acquittal of other aggravating factors presented to jury), *cert. denied,* 476 *U.S.* 1130, 106 *S.Ct.* 1998, 90 *L.Ed.*2d 678, *reh'g denied,* 478 *U.S.* 1014, 106 *S.Ct.* 3321, 92 *L.Ed.*2d 728 (1986); *State v. Gilbert,* 277 *S.C.* 53, 283 *S.E.*2d 179 (1981) (no double-jeopardy violation in submitting aggravating factor to jury not found at initial trial), *cert. denied,* 456 *U.S.* 984, 102 *S.Ct.* 2258, 72 *L.Ed.*2d 863 (1982); *Hopkinson v. State,* 664 *P.*2d 43, 70 (Wyo.) (holding that aggravating factors not found to exist at first trial could be submitted at resentencing without violating principles of double jeopardy because "there is no such thing as an acquittal from an aggravating circumstance in the penalty phase."), *cert. denied,* 464 *U.S.* 908, 104 *S.Ct.* 262, 78 *L.Ed.*2d 246 (1983). *Contra State v. Silhan,* 302 *N.C.* 223, 275 *S.E.*2d 450 (1981) (holding that considerations of double jeopardy preclude State from relying at resentencing on aggravating factors not found at original proceeding).

## IV.

█ Having concluded that principles of double jeopardy present no bar, we next consider whether the State's reliance at resentencing on aggravating factors charged but not unanimously found in the initial proceeding offends notions of fundamental fairness. We frequently invoke the doctrine of fundamental fairness in criminal matters "when the scope of a particular constitutional protection has not been extended to protect a defendant." *State v. Yoskowitz,* 116 *N.J.* 679, 705, 563 *A.*2d 1 (1989). Accordingly, precepts of fundamental fairness have been used to prohibit various types of governmental action even though a defendant's constitutional rights were not directly implicated. *See, e.g., State v. Tropea,* 78 *N.J.* 309, 394

*A*.2d 355 (1978) (fundamental fairness precludes any retrial where on appeal for failure to produce an essential element of proof court vacated defendant's earlier conviction on same charge); *Rodriguez v. Rosenblatt,* 58 *N.J.* 281, 277 *A.*2d 216 (1971) (considerations of fairness dictate that municipal court appoint counsel where necessary to protect indigents against injustices that may result from their inability to cope fairly with the charges against them); *State v. Calvacca,* 199 *N.J.Super.* 434, 440, 489 *A.*2d 1199 (App.Div.1985) (custodial sentence imposed for drunk-driving conviction "infringe[d] on [defendant's] right to fundamental fairness in sentencing" where court relied on defendant's drunkenness in imposing custodial sentence for conviction of death by auto).

*State v. Currie,* 41 *N.J.* 531, 197 *A.*2d 678 (1964), focuses on the "fundamental fairness" doctrine in the context of double jeopardy. In *Currie,* police officers stopped defendant's car. As one of the officers approached, defendant drove away, striking the officer and the police car. Another officer was injured as he tried to avoid the speeding car. Defendant was ultimately apprehended, charged, and convicted in municipal court for reckless driving and leaving the scene of an accident. More than one year later, defendant was charged with and convicted by a jury of atrocious assault and battery. Both the Appellate Division and this Court rejected defendant's claim that the second prosecution was barred on double-jeopardy grounds.

Justice Jacobs, writing for the Court, also considered whether the second prosecution was unfair, stating that "[i]n applying the prohibition against double jeopardy * * * [t]he primary considerations should be fairness and fulfillment of reasonable expectations in the light of the constitutional and common law goals." *Id.* at 539, 197 *A.*2d 678. The Court concluded the second prosecution did not involve "elements of oppression or harassment" or violate the reasonable expectations of the defendant. *Id.* at 543, 197 *A.*2d 678. Rather, barring the second prosecution would have been grossly unfair to the State. *Ibid.*

The *Currie* analysis suggests that the doctrine of fundamental fairness may fairly be considered "a penumbral right reasonably extrapolated from other specific constitutional guarantees * * *." *State v. Abbati,* 99 *N.J.* 418, 430, 493 *A.*2d 513 (1985) (citations omitted).

We have also applied principles of fundamental fairness in death-penalty proceedings. In *State v. Ramseur, supra,* we held that precepts of fundamental fairness require that "juries in capital cases be informed of, and free to exercise, the statutory option to return a final, non-unanimous verdict * * *." 106 *N.J.* at 308–09, 311–12, 524 *A.*2d 188. In *Biegenwald* II, *supra,* we held that the dictates of fundamental fairness require that the jury, in order to impose a death sentence, must find that the statutory aggravating factors adduced by the State outweigh mitigating factors beyond a reasonable doubt. 106 *N.J.* at 62, 524 *A.*2d 130. We concluded that the adoption of the reasonable doubt standard in other contexts indicated the Legislature's "probable intention to impose the same burden" on the capital sentencing balancing process. *Id.* at 60, 524 *A.*2d 130. Finally, in *Biegenwald* III, we held that consideration of a murder conviction at the second penalty-phase proceeding, which occurred before resentencing but after the original trial, was not fundamentally unfair, because there was "no element of unfairness or surprise to the defendant." 110 *N.J.* at 540, 542 *A.*2d 442.

In the context of double jeopardy, determination of whether government action offends concepts of state fundamental fairness depends largely on the policy interests underlying that constitutional guarantee. *State v. Currie, supra,* 41 *N.J.* at 539, 197 *A.*2d 678. We conclude that resubmission of aggravating factors that the jury in the first sentencing proceeding did not unanimously find to exist does not implicate the policies underlying the double-jeopardy clause, which primarily seek to prevent the State from using its vast resources to harass and oppress defendants through multiple prosecutions or punishments for the same offense. *Id.* at 536, 197 *A.*2d 678.

Proper administration of our capital-sentencing scheme requires that the jury's decision in the penalty phase be based on consideration of the "individual characteristics of the offender and his crime." *Biegenwald* III, *supra*, 110 *N.J.* at 538, 542 *A.*2d 442. Accordingly, we have recognized that in capital sentencing, "the jury must have before it all the possible relevant information 'regarding the individual characteristics of the defendant and his offense, including the nature and circumstances of the crime and the defendant's character, background, history, mental condition and physical condition.'" *Id.* at 539, 542 *A.*2d 442 (citing *California v. Ramos*, 463 *U.S.* 992, 1006, 103 *S.Ct.* 3446, 3455, 77 *L.Ed.*2d 1171, 1184 (1983) (citation omitted)). To that end, we have construed the death-penalty statute to impose on defendants only the burden of presenting evidence of mitigating factors in order for such factors to be considered by a jury in its penalty-phase deliberations. *Bey* II, *supra*, 112 *N.J.* at 159, 548 *A.*2d 887. Moreover, any juror is permitted, in the balancing process, to weigh a mitigating factor found to exist by that juror, even if no other juror agrees. *Id.* at 160, 548 *A.*2d 887. Nor has the State ever suggested that we should preclude a defendant from resubmitting, at a second sentencing proceeding, a mitigating factor rejected by all jurors at the first proceeding.

We note that the Capital Punishment Act as interpreted by this Court provides extensive safeguards against unfair and arbitrary imposition of the death penalty. As we observed in *State v. Bey* (*Bey* I), 112 *N.J.* 45, 92, 548 *A.*2d 846 (1988):

We acknowledge that the death sentence and capital proceedings differ in several respects from incarceration and noncapital prosecutions. We believe that in death penalty cases an appellate court must subject the record to intense scrutiny. The stark fact that a litigant's life is at stake intensifies the obligation of judicial review. * * * [W]e have engaged in that very meticulous and searching review of the record in every capital case that has come before us. (Citations omitted.)

Nevertheless, we are satisfied that to allow the State to charge at resentencing aggravating factors that were supported by sufficient evidence but not unanimously found at the initial

sentencing hearing poses no fundamental unfairness to defendants. We conclude that resubmission of such aggravating factors at a second penalty proceeding is consistent with the basic premise that all relevant evidence "regarding the individual characteristics of the defendant and his offense" be considered by the jury. *Biegenwald* III, *supra*, 110 *N.J.* at 539, 542 *A.*2d 442 (citations omitted). Exclusion of this relevant information regarding the nature and circumstances of a defendant's crime would unnecessarily impede the jury's crucial function in determining whether death is the appropriate punishment.

Judgment reversed.

HANDLER, J., dissenting.

In the earlier trial of defendant for the murder of Amie Hoffman, the jury unanimously found two aggravating factors: that he had a prior murder conviction (*N.J.S.A.* 2C:11-3c(4)(a)) and that he killed in the course of a sexual assault and kidnapping (*N.J.S.A.* 2C:11-3c(4)(g)). The jury, however, did not find two other aggravating factors that were alleged by the State: that the murder was "outrageously or wantonly vile" (*N.J.S.A.* 2C:11-3c(4)(c)) and committed to "escape detection" (*N.J.S.A.* 2C:11-3c(4)(f)). The jury was unable to agree unanimously with respect to those two factors, voting eleven to one in favor of the former, and eight to four in favor of the latter. Following the appeal to our Court, the case was remanded for another trial to determine whether defendant should be put to death.

On remand, defendant moved to bar the submission of the aggravating factors not previously found by the jury, *i.e.*, that he had committed an "outrageously wanton and vile" murder "to escape detection." The trial court agreed, holding that our decisions in *State v. Biegenwald*, 106 *N.J.* 13, 524 *A.*2d 130 (1987), and 110 *N.J.* 521, 542 *A.*2d 442 (1988), barred the State from charging any aggravating factors at the second penalty

trial which it failed to prove to unanimous-jury satisfaction in the first penalty trial. The majority reverses that determination, concluding "that a jury's failure to determine unanimously the existence of a statutory aggravating factor does not constitute an 'acquittal' of that factor, barring its presentation at resentencing on double-jeopardy grounds." *Ante* at 524, 572 *A.*2d at 628.

I disagree. The dissenting opinion of Justice O'Hern, with which I concur, demonstrates as a matter of federal constitutional law that double jeopardy applies to the specific context of the sentencing phase of a capital-murder trial and should bar the resubmission of the aggravating factors that were not found by the jury in the prior sentencing trial. *Post* at 547, 572 *A.*2d at 639–640 (citing *Bullington v. Missouri*, 451 *U.S.* 430, 101 *S.Ct.* 1852, 68 *L.Ed.*2d 270 (1981)). I would also hold that given this State's statutory treatment of aggravating factors, double jeopardy principles under state, as well as federal, constitutional standards preclude the re-presentation at a new trial of aggravating factors that have been rejected by a jury, either by a unanimous or non-unanimous determination.

We have consistently recognized the bar of double jeopardy against successive prosecutions for essentially the same crime. *See State v. DeLuca*, 108 *N.J.* 98, 527 *A.*2d 1355 (1987); *State v. Dively*, 92 *N.J.* 573, 458 *A.*2d 502 (1983); *State v. Lynch*, 79 *N.J.* 327, 399 *A.*2d 629 (1979); *State v. Tropea*, 78 *N.J.* 309, 394 *A.*2d 355 (1978). The crime of capital murder is defined by relevant aggravating factors. As underscored by Justice O'Hern, it is indisputable that under our death penalty statute the aggravating factors are essential elements of the crime of capital murder—a murder for which the death penalty can be imposed. Unless a murder is shown to have been committed under circumstances establishing an aggravating factor under the death penalty statute, it will not constitute capital murder warranting the death penalty. *Post* at 545–547, 572 *A.*2d at 639. This Court itself recognized in the seminal *Ramseur* case that the aggravating factors constitute elements of the offense

of capital murder. The Court, here, reiterates this understanding:

> We observed in *State v. Ramseur, supra,* 106 *N.J.* at 185 [524 *A.*2d 188], that the jury's consideration of statutory aggravating factors serves to narrow the class of death-eligible murderers as well as to guide the jury's discretion in determining the appropriateness of a death sentence.
>
> [*Ante* at 525, 572 *A.*2d at 628.]

According to one standard test under well-settled principles of double jeopardy, a crime is defined by its essential elements; crimes are the same if their elements are the same. *Blockburger v. United States,* 284 *U.S.* 299, 304, 52 *S.Ct.* 180, 182, 76 *L.Ed.* 306, 309 (1932); *State v. DeLuca, supra,* 108 *N.J.* at 105, 527 *A.*2d 1355; *see Brown v. Ohio,* 432 *U.S.* 161, 163, 97 *S.Ct.* 2221, 2224, 53 *L.Ed.*2d 187, 193, 195 (1977). Thus, the subsequent prosecution for an offense that is based on the *same elements* of a crime involved in an earlier prosecution would involve the prosecution of the *same crime* for double jeopardy purposes. *See, e.g., State v. DeLuca, supra,* 108 *N.J.* 98, 527 *A.*2d 1355; *State v. Dively, supra,* 92 *N.J.* 573, 458 *A.*2d 502. It follows that when there is a verdict to impose the death penalty involving the rejection of specific aggravating factors, a retrial seeking the death penalty based on identical aggravating factors is tantamount to a retrial for the *same* crime. Here, two of the elements of the crime tried and previously determined not to exist are identical to two of the elements of the crime that will be retried, namely, capital murder as defined by the aggravating factors c(4)(c) and c(4)(f). The State may not in any other context retry a defendant for the same crime involving the same elements with respect to which there was a rejection. *See, e.g., State v. Grunow,* 102 *N.J.* 133, 149, 506 *A.*2d 708 (1986). The State should not, in the context of a capital murder prosecution, be given an opportunity in the retrial of a defendant to establish the same aggravating factors that had previously been rejected.

The majority explains its conclusion that double jeopardy does not apply in this case by focusing on asserted differences that can distinguish a sentencing trial from a guilt trial for

double jeopardy purposes. It suggests that aggravating factors may not, after all, constitute elements that serve to define the crime of capital murder warranting the death penalty, and, therefore, a jury's determination with respect to an aggravating factor, be it an affirmative or negative finding, is not a result that can be equated with a conviction or acquittal.

The Court's position in this regard is untenable. In a capital-murder prosecution there are differences between the trial to determine criminal guilt and the trial to determine the penalty. These trials, however, cannot be principally distinguished for double jeopardy purposes. There can be no question that the bifurcated proceeding prescribed by our capital-murder statute to determine whether a defendant shall be put to death entails trials that must be conducted with maximum protections. The trial that can eventuate in a verdict of capital murder and the death sentence is in all respects a criminal trial that is surrounded by all of the constitutional protections guaranteed any criminal defendant, including those relating to double jeopardy. The majority acknowledges this, as it must. *Ante* at 520–521, 572 *A*.2d at 625–626 (citing and quoting *Bullington v. Missouri, supra,* 451 *U.S.* 430, 101 *S.Ct.* 1852, 68 *L.Ed.*2d 270.)

The majority endeavors to escape the conclusion that double jeopardy applies fully to a death-penalty trial by relying on *Poland v. Arizona,* 476 *U.S.* 147, 106 *S.Ct.* 1749, 90 *L.Ed.*2d 123 (1986), where the Supreme Court expressed the view that the failure of the sentencer to find alleged aggravating factors is not an "acquittal" for double jeopardy purposes because the determination of such factors does not involve the determination of a crime or its essential elements. 476 *U.S.* at 155–57, 106 *S.Ct.* at 1755–56, 90 *L.Ed.*2d at 132–33. Accordingly, the majority here rules that the determination of aggravating factors at the sentencing trial entails only the determination of subsidiary facts and does not rise to the level of a determination of the elements of the crime of capital murder. *Ante* at 526, 572 *A*.2d at 629. The majority, however, superimposes the *Poland* holding on an inapposite statutory scheme, and in

effect redefines our law concerning the legal significance of statutory aggravating factors. Its legerdemain involves, first, equivocating over whether aggravating factors constitute the essential *elements* of capital murder; second, viewing aggravating factors somehow as incidental facts not equatable with the elements of a crime; and, third, characterizing the determination of such incidental facts as something less than a verdict.

Because it now chooses to describe aggravating factors as incidental facts, not essential elements of a crime, the majority believes it has put the sentencing trial into a more accurate perspective for double jeopardy purposes. By down-grading aggravating factors, the Court can then consider the jury's deliberation on these factors as ordinary fact-finding rather than a truly critical and discrete functional part of the trial. So viewed, the jury's actual determination of such factors, therefore, does not constitute a significant decision, *i.e.*, either a "conviction" or an "acquittal," and does not implicate the protections of double jeopardy. For this reason, the Court declines to view "the capital sentencing hearing as a set of mini-trials on the existence of each aggravating circumstances," surmising that were it to characterize the determination of aggravating factors in a death-penalty trial as entailing more than the resolution of incidental facts, that would convert the penalty trial into a series of trials within a trial. *Ante* at 522, 572 *A.*2d at 626–627 (quoting *Poland v. Arizona, supra,* 476 *U.S.* at 155–56, 106 *S.Ct.* at 1755–56, 90 *L.Ed.*2d at 132–33).

The flaw in this presentation, however, flows from the labels that the Court uses. It is misguided and confusing to label the jury's consideration and determination of aggravating factors as entailing "mini-trials," even on the premise that those factors are, indeed, the elements of the crime of capital murder. The jury is required by statutory mandate, not judicial whimsy, to deliberate separately on each aggravating factor and to consider, in accordance with the highest standards of proof, whether each aggravating factors exists. This is functionally no different from the jury's responsibility in any criminal case

to determine each element of the crime charged beyond a reasonable doubt. *N.J.S.A.* 2C:1–13a; *see State v. Federico,* 103 *N.J.* 169, 174, 510 *A.*2d 1147 (1986); *State v. Martinez,* 97 *N.J.* 567, 572, 483 *A.*2d 117 (1984) (quoting *Jackson v. Virginia,* 443 *U.S.* 307, 318–19, 99 *S.Ct.* 2781, 2788–89, 61 *L.Ed.*2d 560, 573, *reh. den.,* 444 *U.S.* 890, 100 *S.Ct.* 195, 62 *L.Ed.*2d 126 (1979)). Yet, in the setting of ordinary criminal prosecutions, we are not impelled to call the jury's consideration and determination of essential elements of the charged crime a "mini-trial." Furthermore, the responsibility for the specific determination of such elements is heightened in a capital-murder prosecution as compared to an ordinary criminal prosecution. In the latter it is generally impermissible to request juries to return special verdicts or answer specific interrogatories with respect to particular fact issues or elements. *See, e.g., State v. Simon,* 79 *N.J.* 191, 398 *A.*2d 861 (1979). The opposite is true of a capital-murder prosecution wherein we insist that such special interrogatories be answered by the jury. *See N.J.S.A.* 2C:11–3.

Hence, just as double jeopardy would apply to any jury determination that necessarily resolves the existence of an element of a crime, so must it apply when the jury's determination resolves the existence of an aggravating factor. The characterization or label given the jury's deliberations on aggravating factors simply has nothing to do with whether double jeopardy can attach. A jury's determination of the elements of a crime is itself a matter to which we give legal significance. *See N.J.S.A.* 2C:1–13a. Surely, the specific determination of separate statutory aggravating factors required of a jury in a capital-murder case is an identifiable trial event invested with similar significance.

Having undone the legal concept that aggravating factors are elements of capital murder, the Court then proceeds to ignore the statutory and judicial recognition of "non-unanimity" in capital-murder sentencing. It now rules that a non-unanimous determination cannot be accorded the significance of a non-unanimous verdict. It states:

> [W]e are unwilling to imbue a jury's non-unanimous decision with respect to an aggravating factor with the same reliability that attends a verdict of acquittal on a criminal charge.
>
> [*Ante* at 526, 572 *A.*2d at 629.]

The majority, as earlier noted, repudiates, without expressly acknowledging, our statutory and decisional law that equates aggravating factors with the essential elements of the crime of capital murder, which must be determined by the jury in a death-penalty trial by the same standards of proof that apply to its determination of criminal liability and its determination of the sentence. Because the jury is required conscientiously to make a determination of aggravating factors in the sentencing trial satisfying the exacting standards of proof, and, indeed, to do so with even greater clarity, specificity, and solemnity than may surround its determination of the elements of criminal guilt, aggravating factors are properly considered the subject of a jury "verdict." The Court's contrary position today is unfathomable because it depreciates the role of non-unanimity in a capital-murder trial. Thus, *N.J.S.A.* 2C:11–3c(3)(c) explicitly and clearly provides:

> If the jury is unable to reach a unanimous verdict, the court shall sentence the defendant pursuant to subsection b [providing for a prison sentence rather than the death penalty].

The Court itself has recognized that a non-unanimous verdict constitutes a jury *verdict.* We have stated clearly, precisely, and simply:

> From this statutory language, it is clear that the Legislature contemplated three possible final verdicts in a capital case: a unanimous verdict that results in imprisonment, a unanimous verdict that results in death, and a non-unanimous verdict that results in imprisonment.
>
> [*State v. Ramseur, supra,* 106 *N.J.* at 301, 524 *A.*2d 188.]

Moreover, we could not have been more emphatic about the legal significance of a non-unanimous determination as constituting a verdict:

> In a capital trial, unlike the ordinary criminal prosecution, the jurors need not reach a unanimous verdict; a true jury deadlock results not in a mistrial but is a final verdict.
>
> [*Id.* at 312, 524 *A.*2d 188.]

The Court understandably suggests that there is a significant difference between a "verdict" encompassing guilt or innocence or the sentence itself and a "determination" of other issues in the trial. The notion of non-unanimous rejection, as it were, applies only to the former, according to the Court. Undoubtedly, the difference between a verdict and a determination in this context is more than semantical, but it surely cannot follow that a non-unanimous determination—a failure to reach a unanimous determination—of the existence of an aggravating factor is tantamount to a "non-determination." The statute and our decisional law demand explicitly that an aggravating factor be found only by unanimous jury agreement. In contrast, a mitigating factor can be found even by a non-unanimous determination and be used in the critical and delicate weighing process. *See State v. Bey (II)*, 112 *N.J.* 123, 161, 548 *A.*2d 887 (1988). Clearly it is within the completion of our legislative scheme that once a jury has been asked to consider and determine—unanimously—whether an aggravating factor exists, its failure to do so must equate legally with the rejection of that factor. This conclusion is entirely consistent with that prescribed for the return of a sentencing verdict, and must be accorded the same treatment.

The Court justifies its ruling that a non-unanimous determination of aggravating factors is not a legal final determination with respect to those factors by impugning the integrity of jurors, stating that jurors who have reached "non-unanimous decisions" are "unreliable."

> Under our capital-sentencing scheme, a unanimous finding of the existence of any *one* of the statutory aggravating factors charged by the State could result in a death sentence, provided that the jury determines that such aggravating factor outweighs the mitigating factors beyond a reasonable doubt. Unlike guilt-phase deliberations, a jury charged with deciding the existence of several aggravating factors might not exhaust its deliberative capacity in an effort to achieve unanimity on all such factors if it has already found that *one* aggravating factor, on which it does unanimously agree, outweighs the mitigating factors beyond a reasonable doubt.
>
> [*Ante* at 525–526, 572 *A.*2d at 628.]

The Court must be describing a phantom jury summoned to serve a special role in its opinion. There is, however, not the slightest suggestion that the real jury in this case at the first trial acted like the flagging, impatient, and inattentive jury in the Court's scenario. The jury in this case was required by express instructions to consider and determine each and every aggravating factor *before* it proceeded to consider mitigating factors, which it must have then done because it was also instructed to do so *before* it could weigh aggravating factors against mitigating factors. If the jury had followed the Court's script here, we would have to conclude that the jury willfully failed to follow instructions. If that becomes an operating premise with respect to the way we believe jurors discharge their responsibilities, it will undermine the foundation on which this Court has upheld the constitutionality of the death-penalty statute. That foundation is based on the belief in the integrity of jurors, who must, under clear standards to guide their discretion, act as the conscience of the community in deciding whether the defendant lives or dies. *State v. Bey (II), supra,* 112 *N.J.* at 163, 548 *A.*2d 887.

The Court's jaundiced view of jurors contradicts both its holding and its reasoning in *State v. Ramseur, supra,* that jurors will be conscientious and responsive to their oaths even when they reach a non-unanimous determination.

> We do not believe that the premise underlying this reasoning—that jurors will, if given the chance, take the easy way out and fail even to try to reach agreement—is sound. The process of death qualification, the jurors' oath, and the trial court's instructions are all designed to assure that the jury will make a conscientious attempt to follow the law in reaching its verdict. The entire system of capital punishment depends on the belief that a jury representing the conscience of the community will responsibly exercise its guided discretion in deciding who shall live and who shall die. To hide from the jury the full range of its sentencing options, thus permitting its decision to be based on uninformed and possibly inaccurate speculation, is to mock the goals of rationality and consistency required by modern death penalty jurisprudence. A capital jury does not "avoid its responsibility" by disagreeing—genuine disagreement is a statutorily permissible conclusion of its deliberations.

[106 *N.J.* at 310–11, 548 *A.*2d 887 (citations omitted).]

The Court's obliteration of the legal significance of a non-unanimous jury decision engenders greater confusion when we remind ourselves of the Court's statement of its holding: "a non-unanimous jury finding with respect to the existence of a statutory aggravating factor does not constitute an 'acquittal' of that factor, barring its presentation at resentencing on double-jeopardy grounds." *Ante* at 524, 572 *A.2d* at 628. Unexplained is whether the infirmity of such a jury determination for double jeopardy purposes is the fact that it is *non-unanimous* or the fact that it involves an aggravating factor. If the former, then unextracted from the Court's holding is the inference that a *unanimous* rejection by a jury of an aggravating factor would constitute "an 'acquittal'" and trigger double jeopardy, barring the re-presentation of the same aggravating factor in a new death-penalty trial. The Court should say so. If the latter, then the Court must acknowledge that aggravating factors are not the essential elements of the crime of capital-murder, repudiating the construction of our own capital-murder statute and its state constitutional implications. It should say so.

I adhere to the view under our case law that we are here confronted with what is legally the rejection by a jury of an essential element of a crime. It is illogical to inform a jury that a non-unanimous outcome is legally permissible and acceptable, and will engender specific results, and then fail to attribute any significance or finality thereto. Indeed, we have ruled explicitly in the context of capital murder that even the lost opportunity to have the jury consider and return a non-unanimous verdict concerning the death penalty will trigger double jeopardy and bar a retrial seeking the death penalty.

We hold that where a trial court in a capital case has erroneously given coercive supplemental instructions in violation of [*State v. Czachor*, 82 *N.J.* 392, 413 *A.*2d 593 (1980)] to a jury that has expressed its inability to agree, the law must afford defendant the benefit of the final non-unanimous verdict that might have been returned absent the coercion. Having erroneously been deprived of a substantial opportunity to receive a jury verdict resulting in imprisonment

rather than death, the defendant may not be subject to another capital sentencing proceeding.

[*Ramseur, supra,* 106 *N.J.* at 313, 524 *A.*2d 188.]

The majority deprecates the effect of its holding by asserting that to disregard completely the non-unanimous verdict is *not* fundamentally unfair to the defendant—who has been told by the Legislature and by this Court that a non-unanimous verdict *is* a verdict. Here, the jury has been specifically instructed that a failure to agree unanimously on the existence of an aggravating factor means that that factor cannot be considered in any way in the deliberations that can eventuate in death sentence. Yet, the Court says that the resubmission of aggravating factors at resentencing that were rejected by a non-unanimous determination "poses no fundamental unfairness to defendants." *Ante* at 532, 572 *A.*2d at 631–632. That cannot be squared with what we have already concluded to be the effect of a non-unanimous verdict in determining whether the defendant should be put to death: "In these circumstances, we would regard it as intolerably unfair to require the defendant to undergo a second capital resentencing proceeding." *Ramseur, supra,* 106 *N.J.* at 314, 524 *A.*2d 188. Moreover, the Court consoles itself with the thought that negating the effect of a non-unanimous determination of an aggravating factor will also be "helpful" to the next jury. *Ante* at 531–532, 572 *A.*2d at 631–632. That, however, cannot be determinative: Presenting issues foreclosed by a prior prosecution cannot forestall the bar of double jeopardy, no matter how enlightening they may be in a subsequent trial. We have repeatedly stressed that underlying all the protections provided by the [double jeopardy] clause is the principle

> that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.
>
> [*State v. DeLuca, supra,* 108 *N.J.* at 102, 527 *A.*2d 1355, quoting *Green v. United States,* 355 *U.S.* 184, 187–88, 78 *S.Ct.* 221, 223–24, 2 *L.Ed.*2d 199, 204 (1957).]

The Court, here, again acknowledges that double jeopardy protections "primarily seek to prevent the State from using its vast resources to harass and oppress defendants through multiple prosecutions or punishments for the same offense." *Ante* at 530, 572 *A.*2d at 631 (citing *State v. Currie,* 41 *N.J.* 531, 539, 197 *A.*2d 678 (1964)). It strikes me that what the Court is doing today is both "intolerably unfair" and a use of State resources "to harass and oppress" a defendant.

The Court's rationalization of fairness and enlightenment in support of its holding sounds particularly hollow. Notwithstanding a crocodilian explanation to the contrary, the Court sanctions a prosecution that flouts the protections of double jeopardy and is patently unprincipled. Its holding is flatly at war with our clear holdings construing and applying the capital-murder statute. The Court redefines the legislative scheme and converts our prior decisions into curious essays on capital-murder jurisprudence. Because the Court does not confront our prior holdings and overrule them, it disquietingly appears to abandon the fundamental principle that a capital-murder system is tolerable only if the execution of defendants is based firmly on the nondelegable decision of responsible jurors clearly guided by exacting standards. As disturbing, the Court's opinion betrays a loss of patience with the current administration of capital-murder justice—a patience that is essential if we insist, as we must, that the State may not execute a defendant without first providing the fullest measure of protection.

Justice CLIFFORD joins in so much of this opinion as departs from the Court's "new ruling" that non-unanimous jury decisions are "unreliable."

O'HERN, J., dissenting.

No one wants to see cases like this drag through the system for years. The families of the victims relive their suffering as long as the case goes on. In my view, the trial court wisely

declined to create a problem of constitutional dimension in this case. We would be well advised to let its decision stand.

Defendant has been convicted of a cruel and vicious murder. The question on his appeal is whether he may be subjected to a second trial on elements of capital murder that a former jury resolved in his favor. The majority says that he may be twice tried for these elements of capital murder because in the prior proceeding "a jury charged with deciding the existence of several aggravating factors might not necessarily exhaust its deliberative capacity in an effort to achieve unanimity on all such factors if it should determine that *one* aggravating factor, on which it does unanimously agree, outweighs the mitigating factors beyond a reasonable doubt." *Ante* at 525–526, 572 *A.*2d at 628.

To begin with, this is an incorrect understanding of how we expect juries to proceed in capital cases. We explained in *State v. Bey (II),* 112 *N.J.* 123, 548 *A.*2d 887 (1988) that:

> In the sentencing phase, the jury is obliged to determine, first, the existence of any aggravating factor or factors. The jury must find that at least one aggravating factor exists before the death penalty may be imposed. If the jury "finds that no aggravating factors exist * * * the court shall sentence the defendant pursuant to subsection b," which requires a term of imprisonment. If, however, the jury finds an aggravating factor exists, then it must determine whether any mitigating factors also exist. After making fact findings about the "existence or non-existence" of aggravating and mitigating factors, the jury must then make the normative judgment whether the aggravating outweigh the mitigating factors beyond a reasonable doubt. That decision, in effect, determines the appropriateness of the death penalty for the defendant. [*Id.* at 158, 548 *A.*2d 887.]

Besides, this principle of abstract reasoning may have relevance to certain social sciences or other fields of public policy in which finality is not an end in itself. A jury verdict, however, is not just another decision that may be reviewed and revised if its premises are questioned.

We have always accorded the most solemn significance to a jury verdict. No judge may command that a verdict be entered. No judge may allow partial verdicts with reconstituted juries. No jury may be questioned about the reasons for its verdict.

It is not that we value the truth-seeking process the less, but that we value the jury the more. Hence, we would never apply the majority's principles to any other setting. An example will suffice. If a jury convicted a defendant of non-capital murder but acquitted him of an underlying related felony, such as a rape or robbery, we could never retry him for the underlying rape or robbery on the theory that the jury had not "exhaust[ed] its deliberative capacity." *Ante* at 525, 572 *A.2d* at 628. Is it not ironic, then, that we can say that "[i]mposition of the penalty of death is 'profoundly different from all other penalties,' * * * and, as such, requires more, not fewer, procedural safeguards * * *," *State v. Biegenwald,* 96 *N.J.* 630, 639, 477 *A.2d* 318 (1984) (quoting in part *Lockett v. Ohio,* 438 *U.S.* 586, 605, 98 *S.Ct.* 2954, 2965, 57 *L.Ed.*2d 973, 990 (1978)), and yet not apply those safeguards here?

The answer may be made that a capital sentencing verdict is different because it is not a unanimous acquittal in the same sense that a guilt acquittal is. But a non-unanimous verdict in a capital case is a verdict in every sense of the word. Our decisions in *State v. Bey (II), supra,* 112 *N.J.* 123, 548 *A.2d* 887, and *State v. Hunt,* 115 *N.J.* 330, 558 *A.2d* 1259 (1989), have made that clear.

In many cases, an aggravating factor of murder is self-proving, *e.g.,* in the felony-murder situation, *N.J.S.A.* 2C:11–3c(4)(g), or the killing of a police officer, 2C:11–3c(4)(h), as in *State v. Rose,* 112 *N.J.* 454, 548 *A.2d* 1058 (1988). A conscientious jury will almost invariably find such an aggravating factor unanimously to exist. The jury trial on any remaining aggravating factors may be critical in deciding whether the defendant will live or die. A non-unanimous jury verdict on any other aggravating factor would be a verdict in favor of such a defendant. His or her life would have been put at risk once for violation of that factor.

Can a defendant be twice put in jeopardy on the same elements? The goal of all death-penalty jurisprudence is to

assure " 'reliability in the determination that death is the appropriate punishment.' " *Gardner v. Florida,* 430 *U.S.* 349, 364, 97 *S.Ct.* 1197, 1208, 51 *L.Ed.*2d 393, 405 (1977) (White, J., concurring) (quoting *Woodson v. North Carolina,* 428 *U.S.* 280, 305, 96 *S.Ct.* 2978, 2991, 49 *L.Ed.*2d 944, 961 (1976)). It is hard to assert with persuasion that we are advancing "reliability in the determination that death is the appropriate punishment" when one defendant may receive the benefit of a non-unanimous verdict and live, but another may not, depending on the presence, *vel non,* of another aggravating factor in the case.

The majority has made an *ad hoc* determination that this defendant should not receive the benefit of a favorable verdict on some, but not all, of the elements of capital murder. The Court understandably wishes this defendant to face the full measure of punishment for this murder. We have an intuitive sense that the nearly unanimous eleven-to-one vote finding the presence of the *N.J.S.A.* 2C:11–3c(4)(c) "outrageously or wantonly vile" factor should allow retrial of that factor. But our Court must use more than intuition; it must use principles of consistent application. What if, in another case, other aggravating factors used to premise a death sentence were found legally wanting, *see, e.g., State v. Biegenwald,* 106 *N.J.* 13, 51, 524 *A.*2d 130 (1987) (foreclosing c(4)(c) factor based on aggravated battery/torture), and the defendant had won an eleven-to-one vote in his favor on the absence of any other factors? Would we say that a defendant whose appeal set aside the factors relied on by the jury could be retried on the factors found in his favor? I should think not.

Under our statute, the aggravating factors are essential elements of the crime of capital murder. *State v. Biegenwald, supra,* 106 *N.J.* at 59–60, 524 *A.*2d 130. Without aggravating factors, a homicide is not capital murder. Under double-jeopardy principles, acquittal of an essential element of a form of homicide, *e.g.,* knowledge or purpose, forbids retrial of that element of the homicide. *See State v. Grunow,* 102 *N.J.* 133, 149, 506 *A.*2d 708 (1986). When a "slate [is] wiped clean" on

appeal, *ante* at 520, 572 *A*.2d at 625, the defendant in a non-capital case never loses the benefit of a favorable jury verdict. *Green v. United States*, 355 *U.S.* 184, 78 *S.Ct.* 221, 2 *L.Ed.*2d 199 (1957). How then can the majority avoid application of those principles to this proceeding? Constitutional guarantees apply to the sentencing phase of death-penalty proceedings in states in which death-penalty statutes require "all of the hallmarks of a full-blown criminal trial." Note, "Fairness to the End: The Right to Confront Adverse Witnesses in Capital Sentencing Proceedings," 89 *Colum.L.Rev.* 1345, 1365 (1989) (citing *Bullington v. Missouri*, 451 *U.S.* 430, 101 *S.Ct.* 1852, 68 *L.Ed.*2d 270 (1981) (double-jeopardy guarantees extend to trial-type capital sentencing proceeding)).

*Poland v. Arizona*, 476 *U.S.* 147, 106 *S.Ct.* 1749, 90 *L.Ed.*2d 123 (1986), does not deal with a sentencing proceeding like New Jersey's. Under Arizona law, capital sentencing is reposed in the judge. In *Poland*, the court had returned an advisory finding on the aggravating factor based on an interpretation of Arizona law. Factually, it found the factor to exist. As a matter of law, the court questioned whether killing to steal was an aggravating factor under the Arizona statute. The case involved a bank robbery. The question was whether the homicide was "killing for pecuniary gain" as opposed to the classic example of the hired gun. *Poland v. Arizona* is not, then, a clear case of a jury's factual rejection of an aggravating factor. But, more important, Arizona's capital sentencing scheme is not like New Jersey's. Our Legislature, in order to channel the discretion of sentencing juries, has established statutory aggravating factors that a jury must unanimously find to exist beyond a reasonable doubt. *State v. Bey (II), supra,* 112 *N.J.* at 159, 548 *A.*2d 887; *N.J.S.A.* 2C:11–3c(2)(a).[1] A 1985 amendment to the Act, *N.J.S.A.* 2C:11–3f, now requires:

---

[1]*State v. Biegenwald, supra,* 106 *N.J.* at 53, 524 *A.*2d 130, established this principle in reliance on a later amendment to the Act, which we believed should apply to cases on appeal.

Prior to the jury's sentencing deliberations, the trial court shall inform the jury of the sentences which may be imposed pursuant to subsection b. of this section on the defendant if the defendant is not sentenced to death. The jury shall also be informed that a failure to reach a unanimous verdict shall result in sentencing by the court pursuant to subsection b.

"In a capital case, unlike the ordinary criminal prosecution, jurors need not reach a unanimous verdict. Thus, a decision not to agree is a legally acceptable outcome, which results not in a mistrial, but in a final verdict." *State v. Hunt, supra,* 115 *N.J.* at 382–83, 558 *A.*2d 1259 (citing *State v. Ramseur,* 106 *N.J.* 123, 308, 524 *A.*2d 188 (1987)).

Sooner or later, this federal double-jeopardy question will have to be resolved. If we judge wrongly on this issue, it may well result in another capital retrial, prolonging yet again the final disposition of this matter. There are remaining statutory aggravating factors in this case, including two prior murder convictions (the Florida murder and another New Jersey murder, *see State v. Koedatich,* 112 *N.J.* 225, 238 n. 1, 548 *A.*2d 939 (1988), *cert. denied,* —— *U.S.* ——, 109 *S.Ct.* 813, 102 *L.Ed.*2d 803 (1989)), and the underlying felonies. Those factors will enable the jury to make a reliable sentencing determination.

Justices CLIFFORD and HANDLER join in this opinion.

*For reversal* —Chief Justice WILENTZ and Justices POLLOCK, GARIBALDI and STEIN—4.

*Dissenting*—Justices CLIFFORD, HANDLER and O'HERN—3.